**UNITED STATES of America**

v.

**Hillard E. AUSTIN and Joseph J. Miscavage.**

**Crim. No. 74–91.**

United States District Court, M. D. Pennsylvania.

Dec. 10, 1974.

S. John Cottone, U. S. Atty., Scranton, Pa., for plaintiff.

Carlon O'Malley, Jr., Scranton, Pa., Floyd A. Landrey, Beaumont, Tex., for defendants.

## MEMORANDUM AND ORDER

NEALON, District Judge.

This case arises out of the flood relief work performed in the aftermath of Hurricane Agnes in the summer and fall of 1972 in the area of Wilkes-Barre, Pennsylvania, under the auspices of the Department of Housing and Urban Development (H.U.D.). The defendant, Hillard E. Austin, owner of Texas Mobile Home Service and Maintenance (TMH), a company which performed a substantial amount of such flood relief work, was found guilty by a jury of violations of 18 U.S.C. §§ 371, 1001, 1010 and 2. Specifically, in Counts 1 through 20 alleging violations of 18 U.S.C. § 1010, defendant is charged with submitting twenty invoices of TMH to H.U.D. which contained materially false state-

ments relating to hours worked, the cost of equipment, the materials used and the total amount of dollars due from H.U.D. Counts 21 through 40 charged defendant with aiding and abetting Joseph Miscavage in making and furnishing the original invoices to TMH for submission to H.U.D., which invoices contained false, fictitious and fraudulent charges concerning hours worked, equipment and materials used and the total amount of dollars due, all in violation of 18 U.S.C. § 1001. Count 41 charged defendant and Miscavage with conspiracy. Defendant was found guilty on all 41 counts. As an example of the modus operandi, in Count 1 Vaughn Koter, an electrical subcontractor who actually did the work in question, furnished an invoice of $77.00 to Miscavage, who later raised the bill to $400 and ultimately TMH added 20% and submitted a bill of $480 to H.U.D.[1] It was Miscavage's testimony, corroborated in part by Gerald E. Disler, a partner in TMH, that defendant directed him to submit bills of $250 for work performed by Koter of less than $50 and $400 for Koter's work which was in excess of $50, but less than $100. Further, Miscavage testified that defendant informed him that H.U.D. demanded itemized billings and that defendant directed him to itemize in the same amounts, viz., $250 and $400, even though Miscavage told defendant that he would have to falsify such items in order to do it. According to Miscavage, defendant told him that he wouldn't get paid unless he agreed to so inflate his invoices. Miscavage agreed and the falsified invoices followed. Finally, Miscavage testified that defendant demanded a cash kickback from him of $50 on the $250 invoices and $75 on the $400 invoices. The defendant now moves for a new trial on the ground of newly discovered evidence, specifically on the ground that three government witnesses testified falsely at his trial.

■ Motions for a new trial on the ground of newly discovered evidence are not favored and are viewed with great caution. United States v. Lombardozzi, 343 F.2d 127, 128 (2d Cir. 1965), cert. denied, 381 U.S. 938, 85 S.Ct. 1771, 14 L.Ed.2d 702; United States v. Kozak, 438 F.2d 1062 (3rd Cir. 1971); United States v. Odom, 348 F.Supp. 889, 893 (M.D.Pa.1972). And when the newly discovered evidence is what purports to be the truthful testimony of a witness who allegedly testified falsely at trial, the skepticism of the courts has been even greater, such motions being "looked upon with the utmost suspicion [.]" United States v. Troche, 213 F.2d 401, 403 (2d Cir. 1954). That skepticism has led to the promulgation of strict standards for the granting of motions on the ground of newly discovered evidence in general, and even stricter standards when the basis of the motion is false testimony at trial. Among the standards by which a motion for a new trial on the ground of newly discovered evidence must be tested are (1) that the evidence was in fact discovered since the trial; (2) that there are sufficient facts alleged from which it can be concluded that the defendant's failure to learn of the evidence by the time of the trial was due to no lack of diligence on his part; and (3) that the newly discovered evidence is of such a nature that it would probably produce a different result at trial. United States v. Howell, 240 F.2d 149, 159 (3d Cir. 1956).[2] In addition, a motion for a new trial on the basis of false testimony at trial must satisfy the requirements of the so-called "Larrison rule":

"(a) The court is reasonably well satisfied that the testimony given by a material witness is false. (b) That

---

1. Counts 1 through 20 involve TMH's submissions to H.U.D., while Counts 21 through 40 involve Miscavage's submissions to TMH.

2. The other standards which a motion for a new trial on the basis of newly discovered evidence must satisfy are (1) that the newly discovered evidence must not be merely cumulative or impeaching; and (2) that the evidence must be material to the issues involved. Id.

without it the jury might have reached a different conclusion. (c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial."

Wright & Miller, Federal Practice and Procedure: Criminal § 557, quoting from Larrison v. United States, 24 F.2d 82, 87–88 (7th Cir. 1928).

■ Judged by those standards, the instant motion for a new trial must be denied. The most serious defect of the motion is that I am not at all satisfied that the testimony alleged to have been false was in fact false. The first witness alleged to have testified falsely is Joseph Miscavage. In support of his allegation that Miscavage testified falsely, the defendant has submitted an affidavit of an acquaintance of Miscavage, in which that acquaintance states that on the basis of his close association with Miscavage, it is his opinion that Miscavage testified falsely at trial. There has been no recantation by Miscavage of his testimony. Moreover, the acquaintance does not even state that Miscavage told him that his testimony had been false. In addition, a counter affidavit of the government raises serious questions about the credibility of the acquaintance in question. In sum, there is no basis for concluding that Miscavage's testimony at trial was false.

Nor is there any basis for concluding that the testimony of any other witness was false. In support of his claim that the testimony of Gerald E. Disler was false, the defendant has offered an affidavit of one of Disler's secretaries in which the affiant states that to her knowledge Disler and not Austin did the billing for TMH and that during the time she worked for Disler, which incidentally was prior to the time covered in the indictment, Disler "appeared to have come in to more money than ordinary[.]" From this the defendant concludes that Disler's testimony, in which he stated that Austin had directed the blanket billings of $250 and $400, was false, and that Disler, and not Austin, had directed the false billings. Once again, the defendant's showing falls far short of that which would be necessary to lead to a conclusion that Disler testified falsely at trial. There has been no recantation by the witness himself. Moreover, the affidavit offered in support of the claim that Disler's testimony was false is at best merely an indirect attack on Disler's credibility consisting of vague and mostly irrelevant observations. It raises no question in my mind about the truth of Disler's testimony at trial.

■ In support of his contention that Vaughn Koter testified falsely, the defendant has offered an affidavit of Koter himself in which Koter states that he actually submitted two billings to TMH for each job performed, the first in each instance being higher than the second, both of them, however, being lower than the figures used by the defendant in his claim for reimbursement from H.U.D. This affidavit, however, recants none of Koter's testimony at trial. The defendant argues that the affidavit nevertheless establishes that Koter testified falsely at trial, inasmuch as at trial Koter identified the second, lower billings as the original billings submitted by him to TMH, and made no mention of the fact that there had been two billings. The defendant argues that such a discrepancy is material to his defense in that the use of the lower bills at trial established a greater discrepancy between the fair value of the work performed and the amounts submitted to H.U.D. than actually existed. Interestingly, the government has offered a later affidavit of Koter in opposition to the defendant's motion for a new trial. In the later affidavit, Koter "clarifies" his earlier affidavit by pointing out that the earlier affidavit was misleading because it did not contain all the facts surrounding the dual billings, and reaffirms his testimony at trial as being correct and the billings he identified at trial as being the fair and accurate price for the

work he performed for TMH. Under these circumstances I find no basis for questioning the truthfulness of Koter's testimony at trial. In the first place, the first affidavit does not recant that testimony, whereas the second one reaffirms it. Furthermore, the first affidavit is vague, and the clarification in the second affidavit reconciles most of the apparent discrepancies between the first affidavit and the trial testimony. Finally, to whatever extent the two affidavits conflict I would find as a fact that the second one is correct and that hence Koter's testimony at trial was truthful.[3]

Defendant's motion has additional shortcomings. For example, it alleges no facts from which it could be concluded that the failure to call Disler's secretary to the stand during the trial to impeach Disler's credibility was not due to lack of diligence on the part of the defendant. Presumably, the secretary was available at the time of trial and could have been called upon to testify. Another defect in the motion is that there is no showing why Koter's testimony at trial was not called into question at that time on the basis that there had in fact been two billings. The defendant knew that there had been two billings for some of the jobs performed by Koter, and yet did not raise that point in his cross-examination of Koter at trial. In addition, even if Koter had testified fully at trial about the dual billings, the outcome of the trial would doubtless have been the same, inasmuch as both figures submitted by Koter to TMH were below the figures submitted by the defendant to H.U.D. Moreover, after presiding at the trial, I am satisfied that the purported new evidence considered most advantageously to defendant would not have changed the result. In sum and in short, the defendant's motion for a new trial on the basis of false testimony at trial falls far short of the showing necessary for the granting of such a motion, and must therefore be denied.[4]

---

3. If there is an issue of credibility of the newly discovered evidence, the role of the judge to whom the motion is addressed is that of fact finder. United States v. Gantt, 298 F.2d 21 (4th Cir. 1962).

4. The defendant has filed additional post-trial motions in conjunction with his motion for a new trial—a motion for production of documents to be used in support of the new trial motion, and a motion to strike one of the government's affidavits in opposition to the new trial motion. In view of the disposition of the motion for a new trial, all other post-trial motions will also be denied.