**Wade W. BLANKENSHIP, Jr., Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted April 12, 1982.

Decided June 22, 1982.

G. Francis Autman, Jr. (argued) and Robert Thurston Barrett (argued), Barrett & Autman, P. A., Dover, for defendant below, appellant.

James E. Liguori, Deputy Atty. Gen., Dover (argued), for plaintiff below, appellee.

Before, HERRMANN, Chief Justice, McNEILLY and QUILLEN, Justices.

McNEILLY, Justice:

Defendant, Wade W. Blankenship, Jr., appeals his conviction by a Superior Court jury of First Degree Rape and First Degree Burglary. Four arguments are advanced by defendant for reversal of his convictions.

## I

Initially, defendant contends that his confession was illegally obtained and erroneously admitted into evidence below because it was the product of an unconstitutional detention and coercion by the police and because the police failed to give him his *Miranda* warnings. Thus, we scrutinize the police conduct on which defendant bases his contention.

Detectives Brown and Cox of Delaware State Police Troop Number 3 arrived at the home of defendant's parents on the afternoon of September 4, 1980 and asked to speak with defendant. Defendant, who had just worked the night shift at a local plant, was asleep when the detectives arrived. Defendant was awakened and brought to the detectives, clad only in a pair of trousers. Present with the defendant were his pregnant wife and his parents. After the detectives identified themselves to defendant, they informed him that they were investigating a burglary and asked him to step outside to speak with them. Defendant accompanied the detectives outside, where, approximately 50 feet away from defendant's family who remained inside the porch, they questioned him about his whereabouts the night before and the time of his arrival home. The detectives then asked the defendant to go to the police station with them for fingerprinting. Defendant agreed. Since he was only wearing trousers at the time, defendant was permitted to go back inside the house and put on a shirt and shoes before leaving. The police also requested that defendant produce the work boots that he wore at the plant the night before. Defendant complied. Defendant and his family testified that at this point defendant's father told defendant not to say anything to police until he arrived at the police station with a lawyer. The detectives denied ever hearing such a statement.

After defendant finished dressing, he accompanied the detectives to a police car and they departed for the police station. During the trip, the detectives confronted defendant with accusations of rape for the first time. At this juncture, the parties' accounts of the sequence of events diverge. The detectives testified that they gave defendant his *Miranda* warnings immediately after they entered the police car and prior to asking defendant any questions. The detectives testified that defendant confessed to committing the rape and burglary, that he was coherent, although crying, during the questioning, and that he did not request an attorney. Defendant remembered being apprised of his constitutional rights, but stated that the police had already initiated their interrogation of him in the car before giving him the warnings. Defendant further testified that he did not admit to the crimes, that he was extremely upset and disoriented during the ride from his house to the police station due to the effects of medication and marijuana. Defendant claimed to have taken the medi-

cation and smoked the marijuana to relieve the itching from a rash that he had developed at the plant the night before. Witnesses corroborated the fact that defendant had a rash, that he was sent to Milford Hospital for some pills, and that he returned to the plant, only to be sent home early because of the rash. Defendant also testified that, although he specifically requested an attorney, the detectives persisted in questioning him.

Defendant was 22 years old, with an eighth grade education, married, and living with his pregnant wife at the home of his parents when this incident occurred.

### A.

■ The specific police conduct which defendant characterizes as an illegal detention is the detectives' act of successfully confining him in a moving police cruiser, from which there was no safe egress, on the pretext of taking him to the police station for fingerprinting on a burglary charge only, but for the actual purpose of confronting him alone about a rape.

We find no illegal detention of defendant under these circumstances. Defendant does not dispute that he willingly entered the police cruiser and accompanied the detectives to the police station. While it is true that he entered the car armed only with the knowledge that he was to be fingerprinted in connection with a burglary investigation only, the fact that he was not confronted with the rape charge until after he was in the police car is not dispositive here because defendant was certainly aware of the fact that police suspicion had focused on him and that he would be questioned further in connection with the matter under police investigation. There is nothing in the record indicating that defendant protested his presence in the police car; instead, he continued to respond to the detectives' questions. No illegal detention resulted and defendant's statements were properly admitted into evidence. See *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *Vorhauer v. State*, Del.Supr., 212 A.2d 886 (1965).

### B.

Tied closely to defendant's illegal detention argument is his asseveration that any inculpatory statements given by him were the product of police coercion and should have been excluded from evidence at trial.

■ Admission into evidence of an involuntary confession by a defendant deprives him of due process of law. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). To determine whether an accused's confession was voluntary, the totality of the circumstances attending the confession must be reviewed. *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); *Whalen v. State*, Del. Supr., 434 A.2d 1346 (1981). Among the factors to be considered are nighttime interrogation, *Greenwald v. Wisconsin*, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968); defendant's limited mental capacity, *Sims v. Georgia*, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967); incommunicado detention, *Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); defendant's lack of education, *Culombe*, supra; his emotional stability, *Spano v. New York*, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); and physical abuse, *Brown v. Mississippi*, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936). A suspect's age and experience are also relevant. *Haug v. State*, Del.Supr., 406 A.2d 38 (1979).

■ Applying the "totality of the circumstances" test, we conclude that defendant's confession was given voluntarily. The combination of factors which defendant claims, overbore his will are his lack of a high school education, his emotional state, his alleged disorientation, his age, and the police "tactic" of springing the rape charge on him after he was sequestered away from his family in the moving police car.

As to defendant's alleged disorientation, the detectives discerned no confusion or bewilderment in defendant and testified that he gave coherent answers to their questions. As a 22 year old employed married man and father of a child, defendant was

certainly able to stand on his own two feet and decide how to deal with the police investigation. Thus, neither defendant's age or education were dispositive factors here. See *Haug*, supra. Although defendant appeared nervous and was crying during the questioning, the detectives attempted to calm him by giving him a cigarette. By itself, the fact that defendant was emotionally upset during questioning does not render defendant's statements inadmissible. *Brooks v. State*, Del.Supr., 229 A.2d 833 (1967). Moreover, we do not think that the detectives' act of asking defendant about the rape in the police car for the first time operated to overcome his free will. As we have noted, defendant agreed to go with the detectives and answered all of their questions—two strong indicia of the voluntariness of his utterances.

## C.

Defendant's contention that his confession should have been excluded for failure of the police to advise him of his constitutional rights is baseless. Both the detectives and the defendant agree that the *Miranda* warnings were given; the only dispute is when they were given. The police testified that they administered the warnings immediately after they all entered the police car, while defendant asserts that the warnings should have been given immediately before the detectives started to question him outside the house.

The record plainly shows that the *Miranda* warnings were given before any questions designed to elicit inculpatory statements from defendant were asked. The mandate of *Miranda* was obeyed by police and the confession was properly in evidence below.*

---

* Although we are unequivocal in our holding that defendant's confession was voluntary and properly admitted into evidence below, we are constrained to address further the police conduct in this case. This Court is routinely confronted with cases requiring it to assess the constitutionality of police conduct. On some occasions, police behavior dangerously approaches the bounds of permissible law enforcement practice without exceeding them. And so it is here. We perceive the detectives' conduct herein to be borderline police practice. We disapprove of it and may find that it strays beyond the limits of constitutional police procedure in another set of circumstances.

## II

Defendant contends that the evidence was insufficient to identify him as the perpetrator of the crimes and to establish penetration on the First Degree Rape conviction. We find that there was sufficient evidence to enable the jury to conclude to the contrary.

On the issue of identification, the record reveals that the victim recognized her assailant's voice as that of defendant, her former neighbor with whom she had conversed previously, and observed that the intruder was a white male by a glimpse of his knee. The victim testified that her attacker tried to disguise his voice when she showed signs of recognizing him. Defendant's palm print was found on a television antenna tower at a point near the window through which entry into the victim's bedroom was achieved. The story which police testified the defendant gave to them matched the victim's version of the attack and was corroborated at trial by defendant's cousin.

Concerning the question of penetration, the victim testified that defendant put his penis into her vagina, that ejaculation occurred, but not intravaginally, and that she bathed after the attack. These facts are sufficient to support the jury's decision to convict defendant of rape. *McCarthy v. State*, Del.Supr., 372 A.2d 180 (1977).

## III

Defendant argues that the evidence was insufficient to support his conviction for First Degree Burglary because the State failed to prove that the burglary occurred at night.

11 *Del.C.* § 826 reads in pertinent part that

"[a] person is guilty of burglary in the first degree when he knowingly enters or

remains unlawfully in a dwelling *at night* . . . ." *Id.* § 826 (emphasis added).

" 'Night means a period between 30 minutes after sunset and 30 minutes before sunrise." 11 *Del.C.* § 829(c). The only evidence proffered by the State to prove the commission of the burglary "at night" was the testimony of the victim and defendant's father. The victim stated that when she looked at the clock during the rape, it was 5:12 A.M. The defendant's father testified that he heard his son come home at 5:45 A.M., and that the sun was just beginning to rise. The State failed to introduce into evidence the official time of sunrise on September 4, 1980, the date of the attack. In our view, the State did not carry its burden of proving the "at night" element of First Degree Burglary. We reverse the conviction for First Degree Burglary, reduce it to the lesser included offense of Second Degree Burglary, and remand the case for further proceedings consistent herewith.

## IV

Lastly, defendant contends that the Trial Court abused its discretion by not granting his Motion for a New Trial based upon a witness' post-trial recantation, or, alternatively, by not holding an evidentiary hearing to determine whether the witness' recantation required the granting of a new trial.

After his conviction below, defendant lodged an appeal with this Court on June 8, 1981. On June 23, 1981, defendant filed a Motion for a New Trial on the ground that a witness for the State, Roger Young, had recanted his trial testimony. Young, who was defendant's cousin, testified at trial that defendant had discussed the possibility of and a plan for assaulting the victim prior to the commission of the crimes charged. A few months after the trial, Young filed an affidavit recanting his testimony on the ground that it had been given under duress. The Trial Court denied defendant's Motion for a New Trial on September 4, 1981 without holding an evidentiary hearing.

### A.

A Motion for a New Trial based upon a witness' recantation is generally viewed with suspicion, and a denial of such a motion will not be reversed on appeal unless there has been an abuse of discretion by the Trial Court. *United States v. Coleman*, 8th Cir., 460 F.2d 1038, *cert. denied*, 409 U.S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122 (1972); *Batsell v. United States*, 8th Cir., 403 F.2d 395 (1968), *cert. denied*, 393 U.S. 1094, 89 S.Ct. 865, 21 L.Ed.2d 785 (1969); *United States v. Austin*, M.D.Pa., 387 F.Supp. 540 (1974); *Commonwealth v. Coleman*, 438 Pa. 373, 264 A.2d 649 (1970); 8A Moore's Federal Practice § 33.05 (1977); Annotation, *Recantation by Prosecuting Witness in Sex Crime as Ground for New Trial*, 51 A.L.R.3d 907 (1973); 58 Am.Jr.2d, New Trial § 175 (1971). Two standards exist for ruling on a Motion for a New Trial based on recantation. Under the test enunciated in *Larrison v. United States*, 7th Cir., 24 F.2d 82 (1928),

"a new trial should be granted when,
   (a) The Court is reasonably well satisfied that the testimony given by a material witness is false.
   (b) That without it the jury *might* have reached a different conclusion.
   (c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial." *Id.* at 87–88. (emphasis in original).

This test has been adopted in numerous jurisdictions. See, e.g., *United States ex rel. Sostre v. Festa*, 2d Cir., 513 F.2d 1313, *cert. denied*, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975); *United States ex rel. Rice v. Vincent*, 2d Cir., 491 F.2d 1326, *cert. denied*, 419 U.S. 880, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974); *Gordon v. United States*, 6th Cir., 178 F.2d 896 (1949), *cert. denied*, 339 U.S. 935, 70 S.Ct. 664, 94 L.Ed. 1353 (1952); *United States v. Mackin*, D.C. Cir., 561 F.2d 958 (1977); *United States v. Wallace*, 4th Cir., 528 F.2d 863 (1976); *Newman v. United States*, 5th Cir., 238 F.2d 861 (1956); *Austin*, supra. Other courts, which

treat witness recantations as "newly discovered evidence", adhere to the test set forth in *Berry v. State*, Ga.Supr., 10 Ga. 511 (1851) and *Thompson v. United States*, D.C. Cir., 188 F.2d 652 (1951). See *United States v. Mackin*, D.C.Cir., 561 F.2d 958, *cert. denied*, 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977). The *Berry-Thompson* test requires the granting of a new trial on the basis of newly discovered evidence [recanted testimony] if that evidence "would *probably* produce an acquittal upon retrial." *Mackin*, 561 F.2d at 961 (emphasis added). The decisions in certain circuits have not been uniform in the application of these tests. Compare *United States v. Gaither*, D.C.Cir., 440 F.2d 262 (1971) (applying *Thompson* test) with *Mackin*, supra (applying *Larrison* test); *United States v. Rosner*, 2d Cir., 516 F.2d 269 (1975) (applying *Berry* test) with *Festa*, supra (applying *Larrison* test). The United States Supreme Court has not decided whether the *Larrison* test or the *Berry-Thompson* test is to be applied where perjury has occurred. See *United States v. Johnson*, 327 U.S. 106, 111 n. 5, 66 S.Ct. 464, 466 n.5, 90 L.Ed. 562 (1946).

This Court chose to adopt the *Larrison* standard in *Johnson v. State*, Del.Supr., 410 A.2d 1014 (1980). In *Johnson*, the Court stressed that a witness' recantations were "products of prison atmosphere to be received with great caution," *id.* at 1015, *citing United States v. Hamilton*, 5th Cir., 559 F.2d 1370 (1977), and found that the Trial Court did not abuse its discretion in denying defendant's Motion for a New Trial. *Id.*

■ In the instant case, the Trial Court correctly applied the *Larrison* standard, adopted by this Court in *Johnson*, in reviewing defendant's Motion for a New Trial and did not abuse its discretion in denying it. The first element of the *Larrison* test requires a trial judge to grant a new trial if he "is reasonably well satisfied that the testimony given by a material witness is false." We agree with the Trial Judge in his belief that Young's trial testimony was not false. Young's testimony was independently corroborated by evidence found at the scene of the crime and by the victim's testimony as to the manner in which the crime was committed. In light of this corroborating evidence, the Trial Court's assessment of Young's credibility was justified.

The second prong of the *Larrison* test requires the granting of a new trial if the jury "*might*" have reached a different result without Young's trial testimony. We agree with the Trial Judge that the jury would still have convicted the defendant without Young's testimony. The victim identified defendant as her attacker. Defendant's palm print was found on an outside antenna tower. Moreover, the detectives testified that he admitted his guilt to them and discussed with them the *modus operandi* of his crimes, which account agreed with the victim's version of the attack. See *Burns v. United States*, W.D.Mo., 210 F.Supp. 528 (1962), *aff'd*, 8th Cir., 321 F.2d 893 (1963), *cert. denied*, 375 U.S. 959, 84 S.Ct. 449, 11 L.Ed.2d 317 (1963). Thus, it would appear that the jury would have convicted defendant in spite of Young's testimony because there was other credible evidence against him. See *United States v. Muckenstrum*, 5th Cir., 515 F.2d 568, *cert. denied*, 423 U.S. 1032, 96 S.Ct. 564, 46 L.Ed.2d 406 (1975).

Part three of the *Larrison* test mandates the granting of a new trial if "the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial." Again, the Trial Judge correctly assessed the issue in finding that "the defendant knew well in advance of the trial what Young would testify to and had a copy of Young's Michigan statement." Defendant's family knew what Young would probably say on the stand and because of that, as Young stated at trial, he was threatened by defendant's family. There was, then, no surprise in this case; defendant had advance notice of Young's testimony and attempted to impeach it at trial. The Trial Court did not abuse its discretion in denying defendant's Motion for a New Trial.

**B.**

The holding of an evidentiary hearing to determine the merits of a Motion for a New Trial is within the discretion of the trial judge subject to review only for abuse of that discretion. *United States v. Herman*, 3d Cir., 614 F.2d 369 (1980); *United States v. Aguiar*, 5th Cir., 610 F.2d 1296 (1980); *United States v. Johnson*, 5th Cir., 596 F.2d 147 (1979); *United States v. Cardarella*, 8th Cir., 588 F.2d 1204 (1978); *United States v. Scott*, 9th Cir., 521 F.2d 1188 (1975), *cert. denied*, 424 U.S. 955, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976); *United States v. Hoffa*, 6th Cir., 382 F.2d 856, *cert. denied*, 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1967). Generally, "a motion based upon a recantation is ordinarily decided without a hearing." 8A Moore, supra, § 3305. Indeed, trial courts may decide a Motion for a New Trial upon affidavits only. *United States v. Hamilton*, 5th Cir., 559 F.2d 1370 (1977), *citing United States v. Curry*, 5th Cir., 497 F.2d 99, *cert. denied*, 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 311 (1974); *Lyles v. United States*, 5th Cir., 272 F.2d 910 (1959). Where evidentiary hearings are ordered, it is because of certain unique situations typically involving allegations of jury tampering, prosecutorial misconduct or third party confession. *Hamilton*, 559 F.2d at 1373, *citing Richardson v. United States*, 5th Cir., 360 F.2d 366 (1966); *Casias v. United States*, 10th Cir., 337 F.2d 354 (1964), or because the government joined in defense counsel's request for one. See *Curry*, supra.

We hold that the Trial Court did not abuse its discretion in not holding an evidentiary hearing before ruling on defendant's Motion. None of the three exceptional circumstances listed in *Hamilton*, supra, existed in this case; nor did the State concur in defendant's request for a hearing as in *Curry*, supra. (In fact, the State, in its Memorandum in support of its argument against granting defendant's Motion, expressed the hope that an evidentiary hearing would not be necessary.) The Trial Judge was well suited to rule on defendant's Motion because he presided at trial and had the opportunity to evaluate Young's credibility against the backdrop of other evidence presented against defendant at trial. See *Curry*, supra.

Accordingly, the decision of the Superior Court is AFFIRMED IN PART and REVERSED and REMANDED IN PART.