SUPERIOR COURT
OF THE

RICHARD R. COOCH
RESIDENT JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 North King Street, Suite 10400
Wilmington, Delaware 19801-3733
(302) 255-0664

Barzilai K. Axelrod, Esquire
Deputy Attorney General
Department of Justice
820 N. French Street, 7th Floor
Wilmington, Delaware 19801
Attorney for the State

Christopher S. Koyste, Esquire
709 Brandywine Boulevard
Wilmington, Delaware 19809
Attorney for Defendant

> **Re:  *State of Delaware v. Waymond E. Wright*
>  *I.D. No. 1208019720***

Submitted : July 18, 2014
Decided  : August 19, 2014

Upon Defendant's "Motion for Judgment of Acquittal, or
Alternatively for a New Trial."
**DENIED.**

Upon Defendant's "Motion for Leave to Amend
Previously filed Motion for a New Trial."
**DENIED.**

Dear Counsel:

# I.  INTRODUCTION

Defendant Waymond Wright ("Defendant") has filed a "Motion for
Judgment of Acquittal, or Alternatively for a New Trial" following his

conviction of Robbery Second Degree and Conspiracy Second Degree.[1] His convictions stem from an incident involving two co-defendants, Natasha L. Mahaley ("Mahaley") and Steven D. Huff ("Huff").[2] Subsequent to that motion, Defendant also filed a "Motion for Leave to Amend Previously Filed Motion for a New Trial." Defendant argues for a Judgment of Acquittal based on insufficient evidence to support his convictions.[3] Alternatively, he requests a new trial because he alleges he was prejudiced by the partial testimony of a witness and a series of delays that Defendant attributes to the State.[4] In Defendant's Motion to for Leave to Amend, he argues that a recent letter alleged to be from co-defendant Huff requires Amendment to his original Motion for New Trial to add that Huff offered perjured testimony at trial.[5] Defendant also seeks an evidentiary hearing to explore issues related to both the trial delays and Huff's testimony.[6] For the reasons set forth below, this Court **DENIES** the request for an evidentiary hearing and both motions.

## II. **FACTS AND PROCEDURAL HISTORY**

Defendant, along with co-defendants Mahaley and Huff, began their joint trial on July 9, 2013.[7] During jury selection, Defendant brought up, for the first time and via oral motion, the immigration status of the State's witnesses including the State's first witness and alleged robbery victim, Juan Ambrosio ("Ambrosio").[8] Discussion of the issue required significant delays, with the end result being that Ambrosio invoked his Fifth Amendment privilege after the start of his testimony.[9] His testimony was stricken, separate charges involving an incident against Ambrosio (including a weapons charge) were dropped, and the jury was instructed to disregard his testimony.[10] At the time, the Court stated "there are novel and complex issues presented, so we've had more recesses than ordinarily anyone would like, but I think it's been necessary to have taken the time."[11]

---

[1] Def.'s Mot. for Judm. of Acquittal, or Alternatively for New Tr. at 1 (hereinafter "Def.'s Original Mot.").
[2] St.'s Response at 1(hereinafter "St.'s Original Response").
[3] Def.'s Original Mot. at 2.
[4] *Id.* at 4.
[5] Def.'s Mot. for Leave to Amend Previously Filed Mot. for a New Trial at 3 (hereinafter "Def.'s Mot to Amend").
[6] *Id.* at 5-7.
[7] St.'s Original Response at 1.
[8] Def.'s Original Mot. at 5, St.'s Original Response at 2.
[9] St.'s Original Response at 2.
[10] *Id.* at 3, 29-30.
[11] *Id.*

On July 11, 2013, shortly after it became clear Ambrosio would not testify and some of the charges were dropped, Mahaley entered a guilty plea to Conspiracy Second Degree and the State's second witness Carlos Sanchez ("Sanchez") began to testify.[12] The next day, Huff also entered a guilty plea to Conspiracy Second Degree and Robbery Second Degree.[13] The jury was instructed not to attribute the delays in trial to the Defendant.[14]

Both Mahaley and Huff testified for the State.[15] After his conviction, Defendant filed his pending Motion for Judgment of Acquittal, or Alternatively for a New Trial.

On December 21, 2013, Defendant's counsel notified the Court of a handwritten, notarized letter he received that he alleges to be from Huff,[16] which read as follows:

> I'm writing to you in reference to Mr. Waymond Wright. I, Steven D. Huff was coerce [sic] into signing a plea to robbery 2nd and conspiracy 2nd in which I had nothing to do with due to the position my co-defendant Natasha Mahaley put me in. Mr. Waymond Wright did not have any involvement in the robbery.

Defendant subsequently filed his Motion for Leave to Amend Previously Filed Motion for a New Trial.

Huff has also, through appointed counsel, withdrawn a *pro se* previously filed Motion for Postconviction Relief.[17] As a result of this Huff letter, the State filed perjury charges against Huff.[18]

## III. CONTENTIONS OF THE PARTIES

### A. Defendant's Contentions

Defendant contends that there is insufficient evidence to support either of his convictions. Defendant asserts that there was no evidence of actual

---

[12] St.'s Original Response at 3; Jury Trial, Mahaley (I.D. No. 1208016170) Docket #23 (July 11, 2013).
[13] St.'s Original Response at 3; Jury Trial, Huff (I.D. No. 128019671) Docket #37 (July 12, 2013).
[14] St.'s Original Response at 32 "I further instruct you, as you know, there have been delays in this case. The jury should not attribute these delays to [Defendant]."
[15] Def.'s Original Mot. at 7.
[16] Ltr. dated December 21, 2013 from Christopher S. Koyste, Esquire to the Court.
[17] Ltr. dated July 18, 2014 from Thomas D. Donovan, Esquire, to the Court at 1.
[18] Indictment, True Bill Filed. No 72, Huff (I.D. No. 1404005408) Docket #1 (Apr.14, 2014).

agreement to commit a robbery, and both of Mahaley and Huff testified that there was never an agreement to commit a robbery.[19] Defendant further asserts that Sanchez's testimony about the robbery is too contradictory to support his conviction and other evidence presented only places Defendant at the scene.[20]

Defendant also contends that both the stricken testimony of Ambrosio and the purposeful prosecutor actions that resulted in extensive trial delays mandate that he receive a new trial.[21] Defendant contends that it was the State that failed to prepare for potential impeachment of Ambrosio, and the ensuing delays in dealing with related issues are its fault.[22] Defendant claims that Ambrosio's partial testimony, though it was stricken and jurors were instructed to disregard it, prejudiced his case because it could be interpreted to allude to another, now stricken, crime involving Ambrosio as the victim.[23] Defendant also argues that the extended delays at the start of his trial, first to react to the Ambrosio testimony and then to deal with subsequent guilty pleas from co-defendants Mahaley and Huff, further prejudiced his case. Defendant asserts the State caused the delays and then used those delays to aggressively improve its case, negotiating pleas with both co-defendants, to Defendant's detriment.[24] Defendant requests an evidentiary hearing to explore the reasons for these delays.

As a result of Huff's letter, Defendant also requests to amend his original motion to include an argument that Huff's allegedly perjured testimony mandates a new trial.[25] Defendant also requests an evidentiary hearing to question Huff and create a thorough record of his "new" testimony.[26]

## B. The State's Contentions

The State takes the position that there was more than enough evidence to support convictions on the charges. The State argues it "set forth five independent perspectives" that each, on their own, are enough to support conviction.[27] Those five perspectives included "1) Extensive video

---

[19] Def.'s Original Mot at 2.
[20] Def.'s Original Mot at 2-4, Def.'s Combined Reply at 2.
[21] Def.'s Original Mot at 4.
[22] *Id.* at 5.
[23] *Id.* at 10.
[24] *Id.* at 9.
[25] Def.'s Mot to Amend at 3.
[26] *Id.* at 1.
[27] St.'s Original Response at 7.

surveillance and stillshots from the videos; 2) The testimony of store-owner witness Carlos Sanchez; 3) The testimony of co-defendant and accomplice Natasha Mahaley; 4) The testimony of co-defendant and accomplice Steven Huff; and 5) The testimony of the Chief Investigating Officer, Corporal Simpler."[28]

The State agrees that there may have been no formal agreement to commit robbery here, but argues that an agreement is not needed under Delaware law.[29] As to the robbery charges, the State argues that the jury found the testimony provided credible and when the evidence is viewed in the light most favorable to the State, it met its burden.[30] The State contends the minor witness inconsistencies in this case are not material enough to require the rare remedy of a judgment of acquittal.[31]

The State argues that the delays and issues that resulted from Ambrosio's testimony only came about because Defendant insisted on asking the witness about his immigration status after the Court denied his request to do so.[32] Subsequent delays in the trial, the State argues, were the direct result of Ambrosio's testimony being stricken and some of the charges dropped.[33] The State concedes some of the delays are its fault, but argues that with the changes to the case after Ambrosio invoked, the delays were necessary to readjust its trial strategy.[34] This, the State contends, is what led to the continuing plea negotiations between Mahaley and Huff after the trial commenced. The State points to the fact that the jury was instructed that these delays were not the fault of the Defendant and that they should disregard Ambrosio's testimony.[35] The State also asserts that Defendant failed to cite any authority that equates trial delays with prosecutor error.[36]

As to Huff's alleged recantation, the State contends that Defendant is trying to add an entirely new motion, which is untimely and too attenuated, under the guise of an amendment.[37] The State argues the new evidence fails to satisfy the test for recantation evidence, and therefore a new trial should

---

[28] *Id.* at 7.
[29] *Id.* at 16.
[30] *Id.* at 21-22.
[31] *Id.* at 25.
[32] *Id.* 2, 29.
[33] *Id.* at 29.
[34] *Id.*
[35] *Id.* at 32, 36.
[36] *Id.* at 28.
[37] St's Response to Def.'s Mot. for Leave to Amend Previously Filed Mot. for New Tr. at 3 (hereinafter "St.'s Amend Response").

not be awarded.[38] The State further argues that even if Huff did recant his trial testimony and the Court considers it, it also fails the "newly discovered evidence" standard.[39]

The State opposes holding an evidentiary hearing either on the delays or on Huff's testimony.[40]

## IV. DISCUSSION

### A. Motion for Judgment of Acquittal

A motion for judgment of acquittal challenges the State's trial evidence and takes the case away from the jury.[41] In determining a motion for acquittal, the Court must consider the evidence and all legitimate inferences in the light most favorable to the State.[42] The standard is whether a rational factfinder could determine that guilt was established beyond a reasonable doubt.[43] Such a motion is only granted where the State failed to adduce evidence sufficient to sustain a guilty verdict.[44]

Conspiracy Second Degree under 11 *Del. C.* § 512 occurs when a defendant:

> (1) Agrees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony; or
>
> (2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony; and the person or another person with whom the person conspired commits an overt act in pursuance of the conspiracy.[45]

Although "a common purpose among the conspirators" is required for conspiracy, "it is not necessary that there be a formal agreement in advance

---

[38] St.'s Original Response at 40.
[39] St.'s Amend Response at 4.
[40] *Id.* at 8.
[41] *State v. Biter*, 119 A.2d 894, 898 (Del. Super. Dec. 29, 1955).
[42] *Id.*
[43] *State v. Owens*, 2010 WL 2892701, at * 4 (Del. Super. July 16, 2010) (citing *Vouras v. State,* 452 A.2d 1165, 1169 (Del. 1982).
[44] *State v. Patterson*, 2006 WL 1579817, at *1 (Del. Super. May 30, 2006).
[45] 11 *Del. C.* § 512.

of the crime."[46] "[C]oordinated action among co-conspirators is evidence of an agreement."[47] "If a person understands the unlawful nature of the acts taking place, and nevertheless assists in any manner in the carrying out of the common scheme, he thereupon becomes a conspirator to commit the offense."[48]

A person commits Robbery Second Degree when, in the course of a theft, they:

> 1) Prevent or overcome resistance to the taking of the property or to the retention thereof immediately after the taking; or

> (2) Compel the owner of the property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.[49]

This Court finds that there was sufficient evidence to support both the convictions of Conspiracy Second Degree and Robbery Second Degree. The State sets forth the many pieces of evidence it presented that showed the co-defendants, all working together, took the property of the victim.[50] That evidence includes video surveillance of the area from four different camera angles,[51] still shots taken from the surveillance video for identification[52] and narration by Sanchez, Huff, and Mahaley of some sections of the video,[53] independent witness testimony and identifications of Defendant and Mahaley by Sanchez,[54] testimony admitting the robbery and identifications of Defendant, Huff, and herself by Mahaley,[55] testimony admitting the robbery and identifications of Defendant, Mahaley, and himself by Huff,[56] and testimony of the chief investigating officer.[57] While both Mahaley and Huff testified that there was no formal agreement before the incident to rob anyone, when looking at the evidence in the light most

---

[46] *Stroud v. State*, 577 A.2d 755, 1990 WL 43315 at *3 (Del. Apr. 2, 1990) (ORDER) (citing *Bender v. State*, 253 A.2d 686, 687 (Del. 1969)).

[47] *Lemons v. State*, 32 A.3d 358, 364 (Del. 2011).

[48] *Bender*, 253 A.2d at 687.

[49] 11 *Del. C.* § 831 (1).

[50] St.'s Original Response at 7-15.

[51] *Id.* at 7.

[52] *Id.* at 8-9.

[53] *Id.* at 8.

[54] *Id.* at 9-10.

[55] Id. at 10-12.

[56] *Id.* at 12-14. Huff testified that he and Mahaley had not discussed the facts of the case. He was not present in the courtroom at the time of Mahaley's testimony and was housed in a separate corrections facility from Mahaley. *Id.* at 12-13.

[57] *Id.* at 15.

favorable to the State, it appears that Defendant, at a very minimum, understood that an unlawful act was taking place and "nevertheless assisted." The Court likewise does not find Defendant's arguments that inconsistencies in the testimony provide a basis for a judgment of acquittal. A successful motion for a judgment of acquittal is described as "the rare case where there is an irreconcilable conflict in the State's evidence concerning the defendant's guilt, such as would preclude a conviction beyond a reasonable doubt."[58] "[A] verdict will not be set aside merely because it is based upon conflicting evidence."[59] Also, under Delaware law, corroboration of accomplice testimony is not "an absolute necessity."[60]

   This Court finds in this case that any inconsistencies in testimony were properly resolved by the jury and the facts of this case fail to rise to the "rare case" contemplated when awarding a judgment of acquittal. When viewed in the light most favorable to the State, there is sufficient evidence to support convictions on both Conspiracy Second Degree and Robbery Second Degree.

## B. <u>Motion for a New Trial</u>

   This Court may grant a defendant's motion for a new trial if it is "required in the interest of justice."[61] The Supreme Court of Delaware has identified three factors to consider when determining the adverse effects of prosecutorial action on the fairness of a trial "1) the centrality of the issue affected by the alleged error; 2) the closeness of the case; and 3) the steps taken to mitigate the effects of the alleged error."[62] Prejudicial error, when it occurs, can "usually be cured by the trial judge's instruction to the jury..."[63]

   This Court does not find that the "interest of justice" requires a new trial for Defendant. Any possible prejudice to Defendant as to Ambrosio's stricken testimony[64] or the trial delays was mitigated by jury instructions.

---

[58] *Washington v. State*, 4 A.3d 375, 378 (Del. 2010).

[59] *Richards v. State*, 865 A.2d 1274, 1280 (Del. 2004).

[60] *Washington*, 4 A.3d at 378 (citing *Bland v. State*, 263 A2d 286, 288 (Del. 1970)).

[61] Super. Ct. Crim. R. 33.

[62] *Weddington v. State*, 545 A.2d 607, 612 (Del. 1988).

[63] *Diaz v. State*, 508 A.2d 861, 866 (Del. 1986).

[64] Defendant never cited Ambrosio's stricken testimony as grounds for a mistrial, instead focusing on time delays. St.'s Original Response at 35. Additionally, the Court instructed the jury as follows: "Now before we resume the trial, I have an instruction to give you. Counts I, II, and II have been dismissed. They relate to the alleged robbery… of Juan Ambrosio. You should not speculate as to the reason for the dismissal of those counts. Two charges remain, the count of robbery second degree for the other alleged robbery, and conspiracy second degree. I have ordered that the direct examination, meaning the testimony that you

The State argues that the unexpected loss of Ambrosio's testimony significantly "changed the overall landscape" of its case.[65] Namely, the State contends it was relying on Ambrosio's testimony to identify Huff and establish the subsequently dismissed weapons charge. As such, the State turned to Mahaley and offered a substantially different plea than had previously been offered.[66] Huff's plea followed as a result of Mahaley's plea.[67] After the pleas, the jury was instructed not to attribute any of the delays to Defendant, and only a single juror had an issue for serving an extra day. That juror eventually decided to finish the trial in spite of that issue.[68]

   Defendant fails to show that there was any negative impact on the jury as a result of the delays and any possible impact was mitigated by the instruction. Defendant's argument that it is not about the length of time but "what the State gained as a result of delaying the trial" is likewise unpersuasive. While the State "gained" the testimony of Mahaley and Huff, it lost the testimony of its first witness, including the identification of Huff, and the related charges. Both sides in this case were required to change course to adjust to new developments during trial. As this Court held when denying Defendant's motion for a mistrial due to delays:

> There have been many complicated issues in the case, including the scope of cross-examination of [Ambrosio], and certain things after I made rulings followed which cause the State and two of the co-defendants to come to plea negotiations.
> Yes, ideally they should – would take place before court time or after hours, but some rulings came right in the middle of the day, so it became necessary to allow plea negotiations to see if the interest of justice would be served and the trial shortened by the entries of the pleas…
> Yes, the plea negotiations were lengthy, but as part of it proffers were required by the State, which is not unusual, and in this serious case they were lengthy.[69]

The admission of new evidence, namely Mahaley and Huff's testimony, was prejudicial but not "unfairly prejudicial" enough to outweigh its

---

heard yesterday afternoon, of Juan Ambrosio, to be stricken. You, the jury, must disregard it entirely and give it no weight whatsoever…" *Id.* at 36.

[65] St.'s Original Response at 30.

[66] *Id.* at 29-30.

[67] Ltr. dated Dec. 21, 2013 from Christopher S. Koyste, Esquire, to the Court at 3 ("I...was coerce into signing a plea …in which I had nothing to do with due to the position my co-defendant Natasha Mahaley put me in."). The State also points to the fact that Huff, though counsel, approached the State to negotiate a plea after Mahaley pled. St.'s Original Response at 39.

[68] St.'s Original Response at 32.

[69] *Id.* at 30.

probative value under Delaware Rule of Evidence 403.[70] The delays in Defendant's trial do not warrant that he be granted a new one.

The decision to hold an evidentiary hearing on the merits of a motion for a new trial is a matter of judicial discretion.[71] "Where evidentiary hearings are ordered, it is because of certain unique situations typically involving allegations of jury tampering, prosecutorial misconduct or third party confession."[72] "However, even when such allegations have been made, an evidentiary hearing is not a requirement."[73] This Court holds that an evidentiary hearing to determine "factual findings in relation to the delays"[74] is not necessary as the allegations of Defendant do not fit in with the list of "unique situations" described in *Blankenship*.

## C. Motion to Amend

Defendant seeks to Amend his Motion for Judgment of Acquittal pursuant to Delaware Superior Court Rule of Criminal Procedure 57(d)[75] and Delaware Superior Court Rule of Civil Procedure 15(a) to include arguments that Huff testified falsely at trial.[76] Both civil claims and criminal postconviction claims allow for amendment "when justice so requires." This Court holds that justice does not require that Defendant's original motion be amended because his Motion for a New Trial still fails when the Huff perjury argument is included.

"A [m]otion for a [n]ew [t]rial based upon a witness' recantation is generally viewed with suspicion…"[77] "This is because a recantation has traditionally been viewed as the "product of prison atmosphere to be

---

[70] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." D.R.E. 403.

[71] *Blankenship v. State*, 447 A.2d 428, 435 (Del. 1982) ("The holding of an evidentiary hearing to determine the merits of a Motion for a New Trial is within the discretion of the trial judge subject to review only for abuse of that discretion.").

[72] *Id.*

[73] *State v. Russo*, 700 A.2d 161, 179 (Del. Super. 1996).

[74] Def.'s Mot. to Amend at 7.

[75] "In all cases not provided for by rule or administrative order, the court shall regulate its practice in accordance with the applicable Superior Court civil rule or in any lawful manner not inconsistent with these rules or the rules of the Supreme Court." Super. Ct. Crim. R. 57 (d).

[76] "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Super. Ct. Civ. R. 15 (a).

[77] *Blankenship*, 447 A.2d at 433.

received with great caution."[78] "A trial court should grant a new trial based on a witness' recantation only if (1) the court is "reasonably well satisfied that the testimony given by a material witness is false," (2) without the evidence the jury might have reached a different conclusion, and (3) the false testimony took the party seeking the new trial by surprise and the party was unable to meet it, or the party did not know of its falsity until after the trial."[79] "[A] party seeking a new trial on the basis of recantation must satisfy all three prongs of the *Blankenship* test."[80] "[T]he jury verdict of guilt warrants a presumption that the trial testimony was truthful and that the recanting testimony is not; the defendant bears the burden of showing by clear and convincing evidence that perjured testimony was used against him at trial."[81] "Generally, "a motion based upon a recantation is ordinarily decided without a hearing."[82]

This Court holds that, applying the *Blankenship* test to the purported recantation of Huff, a new trial should not be granted. First, the Court is not "reasonably well satisfied" that Huff testified falsely at trial. Defendant asserts the letter must be credible because Huff subsequently exposed himself to perjury charges.[83] The State contends it is just as likely that Huff's recent letter is, in fact, perjury given Huff's numerous crimes of dishonesty, his eligibility as a habitual offender, his past friendship with Defendant, and the fact that they are both currently housed in the same correctional facility.[84] At his plea colloquy, Huff answered the Court's questions:

> The Court: Have you freely and voluntarily decided to plea guilty to the charges listed in your written plea agreement?
> [Huff]: Yes, I have.
> The Court: Have you been promised anything that is not stated in your written plea agreement?
> [Huff]: No, I haven't.
> The Court: Has your lawyer, the State, or anyone threatened or forced you to enter this plea?
> [Huff]: No.
> …
> The Court: Do you understand, also, that the agreement provides that you are to testify truthfully and consistently at the trial of your co-defendants

---

[78] *Russo*, 700 A.2d at 165 (citing *Johnson v. State,* 410 A.2d 1014, 1015 (Del. 1980)).

[79] *Cabrera v. State*, 840 A.2d 1256, 1266 (Del. 2004)(citing *Blankenship*, 447 A.2d at 433).

[80] *Weedon v. State*, 750 A.2d 521, 529 (Del. 2000).

[81] *Russo*, 700 A.2d at 165.

[82] *Blankenship*, 447 A.2d at 435.

[83] Def.'s Combined Reply at 12.

[84] St.'s Original Response at 38.

with your statement to [Department of Justice Special Investigator] that you gave today?

[Huff]: Yes.

The Court: You have said and do you acknowledge that the statement that you gave to [Department of Justice Special Investigator] is both truthful and accurate?

[Huff]: Yes.

…

The Court: Do you understand that what you're doing today is final, i.e., your plea of guilty, and you'll not be able to come back at any later time to seek to withdraw this guilty plea?

[Huff]: Yes.

The Court: Do you believe you are knowingly, voluntarily and intelligently entering the plea of guilty to this charge?

[Huff]: Yes.[85]

This Court presumes that Huff's statements, both at trial and at the plea colloquy, were truthful. Huff's letter fails to overcome with clear and convincing evidence that presumption. The State goes on to point out evidence to the veracity of Huff's trial testimony, including but not limited to:

> the level of details in …Huff's statement, the level of similarity that his details had to those provided by…Mahaley who was locked in a women's correctional intuition since the day of the robbery and otherwise sequestered, the corroboration of the defendant's narration with the events depicted on the video and to some degree those described by the witness, [and]the collective fleeing of the area.[86]

The Court cannot be "reasonably well satisfied" that this current version of the story, while possibly against Huff's best interest, is truthful. The Court need not reach the other two prongs of the *Blankenship* test as the first prong is dispositive.

In *Hicks v. State*, the Delaware Supreme Court created a three factor test for determining whether a new trial is warranted based upon newly discovered evidence. Under *Hicks*, a new trial is merited when: "(1) The new evidence is of such a nature that it would have probably changed the result if presented to the jury; (2) The evidence was newly discovered . . .; and (3) The evidence must not be merely cumulative or impeaching."[87]

---

[85] *State v. Huff*, ID # 1208019671, at 6, 9-11 (Del. Super. July 12, 2013) (TRANSCRIPT).

[86] St.'s Original Response at 39.

[87] *Hicks v. State*, 913 A.2d 1189, 1194 (Del. 2006).

The Court need not reach *Hicks'* first two factors because the third factor is dispositive. *Hicks* last requires that the evidence not be cumulative and add substance to a defendant's case, rather than merely impeach a witness.[88] As Huff's new testimony is both cumulative (in addition to Mahaley's) and impeaching (to his prior testimony) it fails to provide any independent substantive evidence. Tellingly, Huff has also, through counsel, withdrawn his previously filed *pro se* Motion for Postconviction Relief that asserted he "had nothing to do with the crime."[89]

The decision to hold an evidentiary hearing in this matter is, as described above, one of judicial discretion. Due to the fact that these types of motions generally are decided without a hearing, and that the Court is unconvinced that the argument, even if allowed, would make any difference to Defendant's claim, it declines to hold an evidentiary hearing to further investigate. The Court also remains unconvinced that Huff would even agree to testify, given his constitutional right against self incrimination.[90] Defendant's counsel's statement at oral argument that he "wouldn't be shocked" if Huff agreed to testify at an evidentiary hearing is not enough to warrant one.[91]

## V. CONCLUSION

Therefore, Defendant's Motion for Judgment of Acquittal, or Alternatively for a New Trial is **DENIED.** Defendant's Motion for Leave to Amend Previously filed Motion for a New Trial is also **DENIED.** All requests for an evidentiary hearing are **DENIED.** Defendant will be sentenced on **Friday, October 24, 2014 at 9:30** after a Presentence Investigation.

**IT IS SO ORDERED.**

_____
Richard R. Cooch, R.J.

oc:    Prothonotary
cc:    Investigative Services

---

[88] *Hicks*, 923 A.2d at 1194 (citing *Lloyd v. State*, 534 A.2d 1262, 1267 (Del. 1987)).
[89] Huff's Mot. for Postconviction Relief.
[90] U.S. Const. amend. V. *See also* Del. Const. art. I, § 7 (providing that an accused "shall not be compelled to give evidence against himself").
[91] *State v. Wright*, ID # 1208019720, at 8 (Del. Super. March 28, 2014) (TRANSCRIPT).