561 F.2d 958
 183 U.S.App.D.C. 65, 2 Fed. R. Evid. Serv. 148
 UNITED STATES of America
v.
Margaret MACKIN a/k/a Margaret Nelson, Appellant.
UNITED STATES of America
v.
Erana Mae GIBSON, Appellant.
UNITED STATES of America
v.
Erana Mae GIBSON a/k/a Erana Horton a/k/a Lorana Horton, Appellant.
 Nos. 75-1860, 75-1861 and 76-1851.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 6, 1977.
Decided July 15, 1977.
Rehearing Denied Sept. 12, 1977.
Certiorari Denied Nov. 14, 1977.
See 98 S.Ct. 490
 
 William H. Jeffress, Jr., Washington, D.C. (Appointed by this court), was on the brief for appellant in No. 75-1860; Lawrence J. Winter, Washington, D.C., entered an appearance for appellant in No. 75-1860.
 William W. Bennett, Jr., Washington, D.C. (Appointed by this court), was on the brief for appellant in Nos. 75-1861 and 76-1851.
 Sallie H. Helm, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry and Roger Adelman, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.
 Before TAMM, MacKINNON and ROBB, Circuit Judges.
 Opinion for the Court filed by ROBB, Circuit Judge.
 ROBB, Circuit Judge:
 
 
 1
 In 1972 a jury in the District Court found the defendants Margaret Mackin and Erana Gibson guilty of murder and robbery. They were sentenced and their convictions were affirmed. United States v. Mackin, 163 U.S.App.D.C. 427, 502 F.2d 429, cert. denied, 419 U.S. 1052, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974). Some two and a half years after the trial they filed a motion for a new trial upon the ground that one of the government's key witnesses had partially recanted her testimony. The District Court denied the motion and the defendants appeal. Concluding that the recantation is neither credible nor admissible as substantive evidence we affirm.
 
 
 2
 The evidence in United States v. Mackin, supra, disclosed that the defendant Mackin ran a nursing home whose sole patient was a Mrs. Porter, an aged invalid. Mrs. Mackin wanted to be rid of Mrs. Porter, apparently to make it easier to steal Mrs. Porter's retirement and social security checks. To accomplish this result Mrs. Mackin enlisted the aid of her friend and codefendant Erana Gibson who in turn hired Antonia and George Johnson to take Mrs. Porter away in their car. For their services the Johnsons were paid $100, supplied by Mrs. Mackin. Accompanied by Mackin and Gibson the Johnsons, at midnight, drove Mrs. Porter to the Anacostia River where the helpless old lady was pushed into the water to drown. What we described as the "sordid and horrible" details of the crime were set out at length in our opinion in United States v. Mackin, 163 U.S.App.D.C. 427, 429-434, 502 F.2d 429, 431-436 (1974), cert. denied, 419 U.S. 1052, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974).
 
 
 3
 At trial the Johnsons were the government's key witnesses. Each testified, among other things, that both Mrs. Gibson and Mrs. Mackin accompanied the Johnsons on the midnight ride to the Anacostia River, helped the old lady out of the car when they got there, and walked her to the river where she was drowned. Both defendants, in contrast, testified that Mrs. Gibson was the only defendant who accompanied the Johnsons and the victim.
 
 
 4
 In June 1972, shortly after the trial of Mackin and Gibson, Antonia Johnson pleaded guilty to violation of the Uniform Narcotics Act, robbery, and petty larceny and was placed on probation by the District Court. In January 1975, while still on probation, she told her probation officer and her attorney that she had committed perjury at the Mackin-Gibson trial, that the defendant Mackin was not in the car on the night of the murder. She said however that the rest of her trial testimony was true.
 
 
 5
 At the hearing on the motion for a new trial Antonia Johnson's attorney and the probation officer testified that she had told them her testimony, that Mrs. Mackin was in the car, was false. Antonia Johnson refused to testify at the hearing on the ground that her testimony might incriminate her.
 
 
 6
 George Johnson also talked with his attorney about the case, but the content of his conversation was not disclosed at the new trial hearing. He successfully invoked the attorney-client privilege with respect to the conversation and, like Antonia, he refused to testify.
 
 
 7
 On this appeal the defendants contend (1) that the District Court erred in upholding George Johnson's attorney-client privilege, (2) that the court applied the wrong standard in ruling on the motion for a new trial, and (3) that the court should have granted the motion regardless of the standard applied.
 
 
 8
 The defendants contend that George Johnson consented to the disclosure of his statements to his lawyer, and thereby waived his attorney-client privilege. Whether such a waiver occurred was a question of fact which the District Court carefully explored. Johnson's attorney, Mr. Carpenter, testified at length concerning Johnson's attitude as expressed to him or gathered by him from Johnson's conduct. On all the evidence the court concluded that Johnson had not waived his privilege and we see no reason to disturb this finding.
 
 
 9
 We turn to the merits of the defendants' motion for a new trial.
 
 
 10
 The law of this circuit is that a new trial will not be granted on the basis of newly discovered evidence unless that evidence would probably produce an acquittal upon retrial. Thompson v. United States, 88 U.S.App.D.C. 235, 236, 188 F.2d 652, 653 (1951); United States v. Gaither, 142 U.S.App.D.C. 234, 236, 440 F.2d 262, 264 (1971). Applying this standard, the District Court denied the defendants' motion for a new trial. The defendants contend however that we should apply a different test when the newly discovered evidence shows that a government witness committed perjury at trial. In that case, the defendants argue, a new trial should be granted if the newly discovered evidence might cause the jury to reach a different conclusion. This standard, known as the Larrison test, has been adopted in several circuits. See Larrison v. United States, 24 F.2d 82, 87 (7th Cir. 1928); United States v. Festa, 513 F.2d 1313, 1317 (2d Cir.), cert. denied, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975).
 
 
 11
 The Supreme Court has not found it necessary to decide whether the Thompson or the Larrison test is to be applied when perjury has occurred. See United States v. Johnson, 327 U.S. 106, 111, n. 5, 66 S.Ct. 464, 90 L.Ed. 562 (1946). Likewise, we need not decide in this case which standard will control, for in our judgment a new trial would not be warranted under either standard.
 
 
 12
 We examine the record in the light of the Larrison test. Under that standard a new trial will not be granted unless the "court is reasonably well satisfied that the testimony given by a material witness is false." Larrison v. United States, 24 F.2d 82, 87 (7th Cir. 1928). The District Court here expressed no opinion as to the truth or falsity of the Johnsons' trial testimony but found that the outcome would not have been affected even if Mrs. Johnson had testified that Mrs. Mackin was not present in the Johnson's car. Having carefully examined the record however we conclude that no credible evidence was produced which could satisfy a court that the Johnsons testified falsely at trial. Given this view of the record it is unnecessary to remand the case to the District Court for findings on the credibility of the Johnsons; for as the court observed in the Larrison case "it would be idle to return the record for the purpose of passing upon a motion that must be denied." Id. at 87.
 
 
 13
 We start our appraisal of the record from the premise that recantations by witnesses for the prosecution are viewed with suspicion. United States v. Vincent, 491 F.2d 1326, 1332 (2d Cir.), cert. denied, 419 U.S. 880, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974); Johnson v. United States, 291 F.2d 150 (8th Cir.), cert. denied, 368 U.S. 880, 82 S.Ct. 130, 7 L.Ed.2d 80 (1961); Newman v. United States, 238 F.2d 861 (5th Cir. 1956). Moreover, the evidence of Mrs. Johnson's recantation is hearsay and at common law would not be admissible. Donnelly v. United States, 228 U.S. 243, 273, 33 S.Ct. 449, 57 L.Ed. 820 (1913); United States v. Alexander, 139 U.S.App.D.C. 163, 430 F.2d 904 (1970). Although the defendants argue that the recantation would now be admissible as a statement against interest that is, a credible statement under Rule 804(b)(3) of the Federal Rules of Evidence, we cannot agree. That rule provides that a statement tending to subject a declarant to criminal liability is not excluded as hearsay if the declarant is unavailable as a witness; but the rule contains a limitation:
 
 
 14
 A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. (Emphasis supplied)
 
 
 15
 Thus Mrs. Johnson's recanting statement is inadmissible unless corroborating circumstances clearly indicate its trustworthiness.
 
 
 16
 The testimony of the defendants at the Mackin-Gibson trial is not enough to satisfy the requirement of corroboration; there must be additional "corroborating circumstances". The report of the Judiciary Committee of the House, in approving the Federal Rules of Evidence submitted by the Supreme Court, makes this plain. The report states:
 
 
 17
 As for statements against penal interest, the Committee shared the view of the Court that some such statements do possess adequate assurances of reliability and should be admissible. It believed, however, as did the Court, that statements of this type tending to exculpate the accused are more suspect and so should have their admissibility conditioned upon some further provision ensuring trustworthiness. The proposal in the Court Rule to add a requirement of simple corroboration was, however, deemed ineffective to accomplish this purpose since the accused's own testimony might suffice while not necessarily increasing the reliability of the hearsay statement.
 
 
 18
 H.R.Rep. No. 93-650, 93d Cong., 1st Sess. 16 (1973) (Emphasis supplied).
 
 
 19
 The defendants suggest that Antonia Johnson's recantation should be credited because she told her probation officer in making it that she wanted to "get right with God" and that she realized she had "committed perjury" at the trial. The defendants say also that when she talked to her attorney Mrs. Johnson knew she was exposing herself to prosecution for perjury. These circumstances, say the defendants, show that Mrs. Johnson is now a credible witness. We do not agree. We think Mrs. Johnson is one of that breed described by Judge Brown of the Fifth Circuit as
 
 
 20
 . . . persons who, as participants, co-conspirators, or actors in the criminal activity initially charged, might from a variety of base motives, or importunities, be impelled, by recantation, to come to the aid of a person whose conviction has been brought about by their testimony, confident, as experienced criminal litigants, that the unusual difficulties in successful prosecution for perjury would expose them to no real peril.
 
 
 21
 Newman v. United States, 238 F.2d 861, 862 (5th Cir. 1956). We note further that Mrs. Johnson was subject to the temptation to impress her probation officer with her "rehabilitation", for as he testified, he had the power to recommend her early release from probation. A similar motivation might well have produced her express desire to "get right with God", a variation of the theme she had sounded in her testimony at trial. As the Advisory Committee on the Federal Rules of Evidence observed, such statements "may well be motivated by a desire to curry favor with the authorities." Advisory Committee Note to Fed.R.Evid. 804(b), 56 F.R.D. 328 (1973).
 
 
 22
 Furthermore, the testimony concerning Mrs. Johnson's recantation was marked by confusion. The probation officer at first informed the United States Attorney that Mrs. Johnson had recanted her testimony concerning the presence of both defendants in the death car. At the hearing on the defendants' motion, however, the officer stated that the recantation applied only to Mrs. Mackin's presence. Mrs. Johnson's attorney was equally confused. He could not recall which of his recollections concerning her story sprang from his conversation with her and which sprang from news stories he had read. Almost the only fact of which he was certain was that Mrs. Johnson had recanted concerning Mrs. Mackin's presence in the car. Most significantly, neither the probation officer nor the attorney could recall that Mrs. Johnson suggested any motivation whatsoever either for lying at trial or for waiting two and one-half years to confess her perjury.
 
 
 23
 Turning to the record of the Mackin-Gibson trial we find circumstances that solidly buttress the trial testimony of Antonia Johnson. After Antonia made her original confession to the police they interviewed George Johnson, without disclosing to him what his wife had said, and he corroborated Antonia's statement in every detail including the presence of Mrs. Mackin in the Johnson automobile. In her recantation to her attorney Mrs. Johnson still insisted that she and her husband had no communication with each other before making their statements to the police. She could not explain how it came about that she and her husband independently contrived identical falsehoods. Her only explanation was "it was a very curious thing".
 
 
 24
 We conclude that the defendants offered no credible or admissible evidence from which a court could be "reasonably satisfied" that the testimony of Antonia Johnson at trial was false. All that was produced was uncorroborated and incredible hearsay.
 
 
 25
 Under the standard of Thompson v. United States, supra, the evidence adduced by the defendants does not justify the granting of a new trial. It would be inadmissible as substantive evidence at a retrial; and assuming it might be offered for impeachment purposes the Thompson standard precludes the grant of a new trial on the basis of evidence that is merely impeaching.
 
 
 26
 The Judgments are Affirmed.