[No. 48180-6. En Banc. November 24, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN PARRIS, *Petitioner*.

*Jarrett & Kaeding* and *Susan A. Dubuisson,* for petitioner.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Chris Pomeroy, Deputy,* for respondent.

ROSELLINI, J.—The petitioner was charged as an accomplice in the unlawful delivery of a controlled substance. The trial court denied his motions to exclude statements made during the criminal transaction by the principal, who claimed his Fifth Amendment privilege and was therefore unavailable as a witness. The jury found the petitioner guilty and the Court of Appeals affirmed. *State v. Parris,* 30 Wn. App. 268, 633 P.2d 914 (1981).

The evidence shows that on May 14, 1979, one Milliron, an informant, contacted police officer Hurley and advised him that he had arranged a "buy" of heroin. Milliron telephoned William DeHart and was told that DeHart could obtain a half gram of heroin through his "source" and that they were to meet at the Taco Time in Olympia at 10 p.m. Hurley and Milliron drove together in a car to that address where DeHart joined them within a minute or two, arriving in his own vehicle. The Taco Time was closed or closing at that time. DeHart told Milliron and Hurley that his source would arrive in a few minutes and DeHart would arrange to go with him to get the drugs. He was given $100 in currency for this purpose. Very shortly a third car, a late model silver Oldsmobile station wagon, drove up and DeHart got into the front seat next to the driver. After a brief conversation DeHart got out of the car and advised Hurley and Milliron that "they" would return in about a half hour. He then got back in the car and it started to move away, but stopped after a few yards. The courtesy light came on, and

the inside of the vehicle was lighted up. Milliron was able to see and recognize the petitioner in the driver's seat. He saw DeHart take something from the pocket where he had put the money and hand it to the petitioner, but could not see the object itself. DeHart then got out of the car and the petitioner drove away. DeHart explained that the defendant did not want him in the car because his supplier would be made uneasy.

DeHart told Hurley and Milliron that the drugs were being gotten. Milliron testified that he asked DeHart: "Do you mean that John's going to get them?" Milliron could not recall how DeHart responded to that question. Milliron then asked: "Will it be more than a half hour?" and DeHart said that he did not think so. Milliron then asked: "Well, do you think he'll return with the drugs, or the money, and the quantity and quality would be accurate?" and DeHart replied: "Yes. I think so. There won't be any problem." When Milliron asked DeHart from whom the petitioner was going to get the drugs, DeHart said that he did not know.

They arranged to meet at the Taco Time a half hour later. DeHart drove off, but Hurley and Milliron remained at the scene. A half hour later DeHart returned, coming from behind the Taco Time. He parked his car, got out and brought the heroin to Hurley and Milliron on foot. At the same time, Hurley observed a silver Oldsmobile station wagon driving away from the other side of the Boulevard Tavern, located next door to the Taco Time.

A woman friend of the petitioner, with whom he was living at the time, testified that he had no automobile of his own and that she allowed him to use her silver Oldsmobile station wagon occasionally. She also testified that they frequented the Boulevard Tavern. She did not recall whether either had been at the tavern on the night of May 14, 1979. She said that Parris had no source of income known to her, other than money which she gave him.

The petitioner objected to the testimony of Milliron and Hurley describing their conversations with DeHart at the

scene of the crime. The objection was based on the theory that this testimony made DeHart a witness against the petitioner, one who could not be cross-examined because DeHart was claiming his Fifth Amendment privilege against self-incrimination; and thus the petitioner was deprived of his right to confront the witnesses against him.

The Superior Court found the testimony admissible, and this ruling was affirmed by the Court of Appeals, Division Two, which held that the trustworthiness of DeHart's statements was established in that they qualified as exceptions to the hearsay rule under ER 804(b)(3), as statements against his penal interests; that they bore other adequate "indicia of reliability," and accordingly satisfied Sixth Amendment requirements pursuant to the holding of *Ohio v. Roberts,* 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980). We granted a petition for review limited to this issue.

 The sixth amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution to confront witnesses against him. *Davis v. Alaska,* 415 U.S. 308, 315, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974). The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross examination. *Davis,* at 315, quoting from 5 J. Wigmore, *Evidence* § 1395, at 123 (3d ed. 1940). The purpose of such confrontation is to test the perception, memory and credibility of witnesses. *Davis,* at 316. Also, it serves the purpose of testing the witnesses' narrative powers. E. Cleary, *McCormick on Evidence* § 245 (2d ed. 1972). Where the witness is unavailable to testify, this right of confrontation may be violated if other witnesses testify to the substance of his statements. *See generally Ohio v. Roberts, supra.* On the other hand, the constitutional right to confrontation does not invariably exclude hearsay implicating the accused. *Ohio v. Roberts, supra.*

 The Supreme Court of the United States has recently laid down the following criteria for constitutionally admissible hearsay statements:

In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

(Footnote omitted.) *Roberts,* at 66.

The phrase "indicia of reliability" appears to have had its genesis in *California v. Green,* 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970). In *Dutton v. Evans,* 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970), the Supreme Court delineated these indicia, after first observing that the confrontation clause does not prohibit a witness from testifying as to what he has heard as well as what he has seen. It is only when the out-of-court statement is offered for the truth of its content that confrontation problems arise. In *Dutton,* Evans had objected to testimony concerning a statement by an alleged accomplice, made to a fellow inmate after he was in custody, that had it not been for Evans "we wouldn't be in this now.'" *Dutton,* at 77.

The Court said:

The confrontation issue arises because the jury was being invited to infer that Williams had implicitly identified Evans as the perpetrator of the murder when he blamed Evans for his predicament. But we conclude that there was no denial of the right of confrontation as to this question of identity. First, the statement contained no express assertion about past fact, and consequently it carried on its face a warning to the jury against giving the statement undue weight. Second, Williams' personal knowledge of the identity and role of the other participants in the triple murder is abundantly established by Truett's testimony and by Williams' prior conviction. It is inconceivable that cross-examination could have shown that Williams was not in a position to know whether or not Evans was involved in the murder. Third, the possibility that Williams' statement was founded on faulty recollection is remote in the extreme. Fourth, the

circumstances under which Williams made the statement were such as to give reason to suppose that Williams did not misrepresent Evans' involvement in the crime. These circumstances go beyond a showing that Williams had no apparent reason to lie to Shaw. His statement was spontaneous, and it was against his penal interest to make it. These are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant.

*Dutton,* at 88–89. The *Dutton* Court said:

The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth–determining process in criminal trials by assuring that "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement." *California* v. *Green,* 399 U. S., at 161.

*Dutton,* at 89. This court has recognized this fundamental principle. *State v. Boast,* 87 Wn.2d 447, 453, 553 P.2d 1322 (1976); *State v. Kreck,* 86 Wn.2d 112, 542 P.2d 782 (1975).

Five attendant circumstances were set forth in the case of *United States v. Alvarez,* 584 F.2d 694 (5th Cir. 1978) for use as guidelines in determining the trustworthiness of extra–judicial statements. These are: (1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness. These are not exclusive, of course, and should be considered in conjunction with the factors considered by the United States Supreme Court in *Dutton v. Evans, supra.*

The Court of Appeals in the present case as well as in the more recent case of *State v. Valladares,* 31 Wn. App. 63, 639 P.2d 813 (1982) concluded that because statements against penal interest have been included in Fed. R. Evid. 804(b)(3), which we have adopted verbatim, such statements form a "firmly rooted exception" to the hearsay rule. *See Ohio v. Roberts, supra.*

ER 804(b)(3) provides:

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . .

(3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

While finding that statements against penal interest qualify as firmly rooted exceptions to the hearsay rule, the Court of Appeals nevertheless found it prudent to read the rule as requiring corroboration, both where the statement is offered to inculpate and to exculpate the accused. This interpretation was necessary because, as we have seen, the United States Supreme Court has not found inculpatory statements of accomplices, standing alone, sufficiently reliable to warrant their admission. The Court of Appeals thought that the failure of Congress to make the corroboration requirement applicable to inculpatory statements stemmed "partly from a misreading of Supreme Court decisions regarding the confrontation clause and partly from legislative oversight." It cited Tague, *Perils of the Rulemaking Process: The Development, Application, and Unconstitutionality of Rule 804(b)(3)'s Penal Interest Exception,* 69 Geo. L.J. 851, 854 n.7 (1981); Comment, *Federal Rules of Evidence 804(b)(3) and Inculpatory Statements Against Penal Interest,* 66 Cal. L. Rev. 1189, 1190 n.7, 1216 n.156 (1978). *See State v. Parris,* 30 Wn. App. 268, 276 n.8, 633 P.2d 914 (1981).

The Fifth Circuit in *United States v. Alvarez, supra,* found the omission to be deliberate, rather than inadver-

tent. That court said that the drafters of the federal rule left to the courts the task of delineating the requirements regarding admissibility of inculpatory statements, because of the constitutional question raised by the admission of such statements. This sensible explanation appears to us to be the more likely reason that the drafters made no attempt to define the circumstances under which inculpatory statements could be admitted.

It is not correct to say that inculpatory declarations are included within the "firmly rooted exceptions" to the hearsay rule. According to *Ohio v. Roberts, supra* at 66, if hearsay statements fall within a "firmly rooted exception" to the hearsay rule, they are admissible without "particularized guarantees of trustworthiness." Inculpatory statements must be accompanied by such guaranties in order to be admissible. Thus, we can only say that inculpatory statements are a "firmly rooted exception" if we add the proviso that they must be accompanied by corroborating circumstances clearly indicating their trustworthiness, or, in the words of the Supreme Court, "particularized guarantees of trustworthiness".[1] This is a proviso required by substantive law, not one found expressed in the rule, and it places such statements in the second category of the *Roberts* test.

Whether this requirement is read into the rule, as was done in the Court of Appeals, or is simply recognized as a constitutional prerequisite to the admission of the evidence, the result is the same.

We turn then to the case before us. The petitioner does not question the fact that the statements were made. They were reported by two witnesses, both of whom were cross–examined with no apparent discrediting results. But it is argued that the statements made by DeHart did not amount to confessions of crime and were not made to per-

---

[1]The Court of Appeals in *State v. Valladares, supra* at page 73, also observed that these two tests are the same in substance. They include the circumstances of the declarations themselves, and also other independent evidence of the truthfulness of the statements.

sons whom he thought likely to use those statements against him; and for this reason they did not "so far [tend] to subject him to . . . criminal liability . . . that a reasonable man in his position would not have made the statement[s] unless he believed [them] to be true." ER 804(b)(3).

In order to qualify as a statement against penal interest, a declaration need not have been a clear and unequivocal admission of criminal conduct.

In *United States v. Barrett,* 539 F.2d 244 (1st Cir. 1976), the defendant offered testimony by a witness, Melvin, which tended to exculpate him as a participant in the theft and sale of a stamp collection. The Court of Appeals for the First Circuit, holding that the remarks tended to subject Tilley to criminal liability to the extent "'that a reasonable man in his position would not have made the statement unless he believed it to be true", said that although the remarks did not amount to a clear confession, they strongly implied the declarant's participation in the stamp crimes and hence would tend to subject him to criminal liability. "Though by no means conclusive, the statement would be important evidence against Tilley were he himself on trial for the stamp crimes". *Barrett,* at 251.

The court in *Barrett* also took account of the fact that the remarks were made in a conversation over cards, and that in such circumstances the speaker might not have readily perceived the disserving character of the remarks. Nevertheless, the court was unwilling to say that the circumstances "so far impugned the reliability presumed from the remarks' disserving character" as to take them outside the rule. *Barrett,* at 251. Upon remand the lower court was directed to examine the evidence, including other exculpatory evidence which the Court of Appeals ruled admissible, to determine whether there were circumstances "solidly indicating trustworthiness". *Barrett,* at 253.

The First Circuit's holding that the exception contained in rule 804(b)(3) is not confined to cases in which the declarant makes a "clear confession" does not stand alone.

In *United States v. Alvarez,* 584 F.2d 694 (5th Cir. 1978), the Court of Appeals held that statements made by a declarant (since deceased) talking on the telephone to a person identified by the declarant as the defendant, whom he had called for the purpose of setting up a drug transaction, were against his penal interest within the meaning of the rule. Citing *United States v. Thomas,* 571 F.2d 285 (5th Cir. 1978), the court said that the rule, by referring to statements that "tend to subject the declarant to criminal liability" (*Thomas,* at 288), encompasses disserving statements that would have probative value in a trial against the declarant. The court also cited *Barrett,* observing that, as in that case, the deceased's statements clearly indicated his participation, since they strengthened the impression that he had an insider's knowledge of the crimes. The *Alvarez* court, however, held that the trustworthiness of the testimony regarding those statements was not sufficiently established, there being among other considerations a "virtual dearth of [corroborating] circumstances". *Alvarez,* at 702.

Other cases holding that while a declarant's statements must, in a real and tangible way, subject him to criminal liability, the reach of rule 804(b)(3) is not limited to direct confessions of criminal responsibility include *United States v. Bagley,* 537 F.2d 162 (5th Cir. 1976) and *United States v. Benveniste,* 564 F.2d 335 (9th Cir. 1977).

While it is not the fact that the declaration is against interest but the declarant's awareness of the fact which gives the statement significance, courts have been willing to assume that a reasonable man would be aware of the disserving nature of his remarks even when they are made to a supposed friend. 4 J. Weinstein & M. Berger, *Evidence* ¶ 804(b)(3)[02], at 804–98 (1979). In *United States v. Lang,* 589 F.2d 92 (2d Cir. 1978), a statement made to an undercover agent indicating the witness' criminal conduct as a seller of counterfeit notes was held to be against his interest even though he was not aware that by making the statement he was subjecting himself to criminal liability. And in

*United States v. Bagley, supra* at page 165, it was held that a reasonable man would not falsely admit commission of a serious crime to his cellmate. The fact that the statement was made to a friend and cellmate has no relevance to the determination of whether the statement was against penal interest, the court said, but does bear on its trustworthiness.

On the other hand, the courts have been more suspicious of statements which, though they are against interest on their face, may actually have been made to gain an advantage, as when a person in custody makes a confession as part of a plea bargain. *See United States v. Mackin,* 561 F.2d 958 (D.C. Cir.), *cert. denied sub nom. Gibson v. United States,* 434 U.S. 959, 54 L. Ed. 2d 319, 98 S. Ct. 490 (1977); *United States v. Gonzalez,* 559 F.2d 1271 (5th Cir. 1977); *United States v. Rogers,* 549 F.2d 490 (8th Cir. 1976), *cert. denied,* 431 U.S. 918, 53 L. Ed. 2d 229, 97 S. Ct. 2182 (1977).

Judge Weinstein notes that rule 804(b)(3), in conjunction with rule 403 (ER 403), gives the court sufficient discretion to exclude statements if it finds that they are inherently unreliable because the particular declarant would not have had the requisite belief due to circumstances such as ignorance or currying favor. J. Weinstein & M. Berger, *supra* at 804–97.

Here the declarant, DeHart, undoubtedly knew that he was engaged in criminal conduct and that his statements would be against his interests were they to be repeated in court. His statements were all made in furtherance of the criminal act and were relevant in proving that a delivery had been made. He was evidently satisfied, however, that he was dealing with bona fide purchasers, rather than narcotics agents and presumably did not expect that his statements and acts would lead to his arrest. Nevertheless, there was no apparent motive for him to lie about the progress of the transaction, and the petitioner has suggested none. DeHart was not in custody, and had no reason to involve another in order to curry favor.

We cannot perceive that a reasonable man in the same circumstances would have made these statements unless he believed them to be true. They were made spontaneously as natural steps in the progress of the transaction into which he had voluntarily entered and in which he could expect retaliation if his predictions did not materialize.

The statements would have probative value in a prosecution of DeHart (*United States v. Alvarez, supra; United States v. Thomas, supra*) and the circumstances did not "so far [impugn] the reliability presumed from the remarks' disserving character" as to take them outside the rule. *United States v. Barrett, supra* at 251. The surrounding circumstances point to the trustworthiness of the statements.

As the Court of Appeals in *State v. Valladares,* 31 Wn. App. 63, 71, 639 P.2d 813 (1982) correctly held, corroboration can be found in other evidence of guilt. There were, in addition, as the Court of Appeals found, sufficient corroborating circumstances to establish the trustworthiness of the assurances given by DeHart.

The petitioner was charged as an accomplice in the delivery of the heroin, and the jury was instructed that, in order to convict him, it must find that DeHart delivered a controlled substance. It was instructed that the petitioner was an accomplice if, with knowledge that it would promote or facilitate the commission of the crime, he aided or agreed to aid another person in planning or committing the crime, and that the word "aid" means all assistance whether given by words, acts, encouragement, support or presence. The correctness of that instruction has not been questioned.

The strongest corroborating circumstances here, of course, were that the petitioner appeared at the Taco Time at precisely the time when DeHart had told Milliron and Hurley that he would be meeting his "source", giving rise to the all but inescapable inference that he was there by appointment; that he received some object from DeHart, which was taken from the pocket in which DeHart had placed the money given him for the drug purchase; and

that his vehicle again was seen being driven away from the scene at the announced time for the delivery, that being the time when the delivery was made. Had DeHart made no statement expressly or impliedly implicating him in the delivery, these circumstances would have been sufficient to support a guilty verdict.

The statements attributed to DeHart amounted to no more than assurances that the situation was what it appeared to be—that the petitioner was his "source" who would procure the drug. As in *Dutton v. Evans,* 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970), they contained no express assertion about a past fact and purported to be no more than a statement of expectations. In the absence of any other explanation—and the petitioner has offered none—his presence at the scene at the two significant times for the apparent purpose of keeping an appointment with DeHart was ample corroborating evidence to establish his complicity.

The petitioner has offered the court no suggestion of any responses discrediting DeHart or exculpating the petitioner which he could reasonably have hoped to elicit from DeHart, had an opportunity for cross examination been afforded him. Cross examination could hardly be expected to reveal that DeHart did not know what the petitioner's avowed intentions were; and the petitioner offers no motive which DeHart might have had for lying about those intentions. Under the circumstances of this case, the lack of an opportunity to cross–examine DeHart detracted little, if anything, from the accuracy of the truthfinding process.

In *Dutton v. Evans, supra,* the Court in determining that the hearsay evidence offered there was admissible, observed that the case did not involve the use, or misuse, of a confession made in the coercive atmosphere of official interrogation; that it did not involve any suggestion of prosecutorial misconduct or even negligence; that it did not involve use by the prosecution of a paper transcript; that it did not involve a joint trial; and that it did not involve the wholesale denial of all cross examination, these being sig-

nificant features of cases in which the court had held hearsay evidence inadmissible.

All of these statements are true with regard to the case before us.

As modified herein, the decision of the Court of Appeals, Division Two, is affirmed.

BRACHTENBACH, C.J., STAFFORD, DOLLIVER, and DIMMICK, JJ., and COCHRAN, J. Pro Tem., concur.

WILLIAMS, J., (dissenting)—When, as here, an out-of-court statement is offered against a defendant in a criminal prosecution, the trial judge must ask three questions: (1) Is the statement hearsay? If so, (2) Does the statement come within a recognized exception to the hearsay rule? If so, (3) Will the admission of the statement violate the defendant's right to confront witnesses against him? D. Binder, *The Hearsay Handbook* 11–12 (Supp. 1981).

I dissent because I believe the trial court and the majority incorrectly answer two of these three questions. First, I believe the majority's conclusion that the evidence comes within a recognized exception to the hearsay rule is based on an incorrect and improper application of ER 804(b)(3)'s exception for declarations against interest. Second, I believe the majority's analysis misinterprets constitutional doctrine relating to the confrontation clause. "[H]istorical evidence leaves little doubt . . . that the [Confrontation] Clause was intended to exclude some hearsay." *Ohio v. Roberts,* 448 U.S. 56, 63, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980). I dissent because I believe the majority opinion admits precisely the type of hearsay proscribed by the confrontation clause of the sixth amendment to the United States Constitution. Further, I believe the language of Const. art. 1, § 22 provides greater protections in this area than the Sixth Amendment and independently dictates exclusion of this evidence. I also dissent because I believe the evidence in question is so highly unreliable that protection of the fact-finding process requires its exclusion.

## APPLICATION OF ER 804(b)(3)

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, which is offered in evidence to prove the truth of the matter asserted in the statement. ER 801(c). The declarant is the person who originally makes the statement in question. ER 801(b). In the present case a police informant, Gordon Milliron, was permitted to testify as to conversations which he had with William DeHart (hereinafter declarant) while arranging a drug purchase for the police. Petitioner, John Parris, challenges the admissibility of this testimony by Milliron.

> At which time I asked Mr. DeHart what was going on, and he said . . . that the drugs were being gotten. I said, "Do you mean that John's going to get them? I don't recall what his response was specifically. Then I asked him, I said, "Will it be more than a half hour? He said, "I don't think so." I said, "Well, do you think he'll return with the drugs, or the money, and the quality and quantity would be accurate?" And he said, "Yes, I think so. There won't be any problem."

Report of Proceedings, at 276.

These statements are clearly hearsay. Milliron's testimony relates out–of–court statements which were offered to prove the truth of the matter asserted, that is, that Parris was going to get drugs. As hearsay the statements are only admissible if they fall within an established hearsay exception. ER 802. The only possible exception that could apply is that for statements against penal interest. This exception, only recently recognized by Washington and the federal courts by their adoption of the Federal Rules of Evidence, provides that if a declarant is unavailable his statements are excepted from the hearsay rule when they "so far tended to subject him to civil or criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." ER 804(b)(3). *See* 4 J. Weinstein & M. Berger, *Evidence* ¶ 804(b)(3)[01] (1981); 5A K. Tegland, Wash. Prac. § 405 (2d ed. 1982). The initial problem faced by this court is the

determination of whether this rule applies to DeHart's statements.

In evaluating whether a statement constitutes a declaration against interest under ER 804(b)(3), the first step is to determine who actually made the statement. In other words, who is the declarant? In the above passage the trial judge, relying on ER 804(b)(3), permits Milliron to repeat both the questions that Milliron asked DeHart and DeHart's answers. The question–answer format thus complicates the task of determining who is the declarant. For instance, the questions contain factual assertions in which DeHart acquiesced by answering affirmatively. All of the factual assertions in Milliron's questions, except the crucial one identifying the defendant as the party delivering the drugs, appear to have been affirmed by DeHart. Moreover, the questions are not relevant without their answers and the answers are meaningless without the questions. It would be fruitless, therefore, to examine the admissibility of the questions apart from their answers. The better approach, and one implicit in the trial court's ruling and the majority opinion, is to treat the statements as if they were all attributable to DeHart.[2]

Once the declarant is identified, the next task is to determine whether the statements fall within the terms of ER 804(b)(3). To evaluate this problem, a little terminology and history of the rule is needed. First, the terminology. An inculpatory statement is one which implicates both the declarant and the defendant. Normally, the prosecution seeks to introduce evidence of inculpatory statements.[3]

---

[2]Milliron was acting as a police informant at the time he asked these questions. His questions thus could not have been against his penal interest because he would not be subject to criminal liability for making them.

[3]It is important to remember that statements against penal interest may also be a way of getting around hearsay problems that may arise in contexts other than at trial. For instance, statements against penal interest have been found to provide reliability for statements that form the basis of probable cause for a search warrant. *See United States v. Harris,* 403 U.S. 573, 581, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971).

Exculpatory statements, offered by the defendant, tend to establish the defendant's innocence by substituting the declarant for the defendant as the one responsible for the crime. Both inculpatory and exculpatory statements may be further classified as collateral or noncollateral. A noncollateral statement contains a factual statement which directly implicates only the declarant. For instance, the declarant says, "I killed X; the defendant is innocent." This statement exculpates the defendant by substituting the declarant for the defendant. It contains no collateral reference to someone else's criminal activity. In contrast, a statement such as, "The defendant and I killed X." implicates both the defendant and the declarant. This type of statement is called a collateral statement.[4]

Technically, only that portion of the statement in which the declarant admits his own guilt falls within the terms of ER 804(b)(3). The second portion of the statement implicates a third party. That portion of the statement may actually be in the declarant's interest. For instance, the declarant may believe he will suffer less severe punishment if he shares the guilt or suggests to the police that he can help them convict someone else. Commentators have suggested several ways to handle this problem.

For instance, Dean McCormick set out three solutions:

> First, admit the entire declaration because part is disserving and hence by a kind of contagion of truthfulness, all will be trustworthy. Second, compare the strength of the self–serving interest and the disserving interest in making the statement as a whole, and admit it all if the disserving interest preponderates, and exclude it all if the self–serving interest is greater. Third, admit the disserving parts of the declaration, and exclude the self–serving parts. The third solution seems the most realistic method of adjusting admissibility to trustworthiness, where the serving and disserving parts can be severed.

(Footnotes omitted.) E. Cleary, *McCormick on Evidence* §

---

[4]*See* Comment, *Federal Rule of Evidence 804(b)(3) and Inculpatory Statements Against Penal Interest,* 66 Cal. L. Rev. 1189 (1978) for further discussion of the types of statements against penal interest.

279, at 677 (2d ed. 1972). Weinstein and Berger suggest that a similar test would be appropriate when statements are both disserving and neutral in effect. Because DeHart's statements contain references to someone else's criminal activity, rather than his own, they must be viewed as collateral statements which contain potentially self-serving material. Thus, the majority should have at least explored the possibility of omitting the statements referring to Parris. If it had done so, it would have discovered that no part of DeHart's statements refer to his criminal activity. The majority ignores this alternative and asserts that it is appropriate to admit *any* statement made during the conduct of criminal activity. The history of the rule, revealing as it does suspicion of the exception's reliability, supports only a narrow reading of the rule.

At common law, statements against penal interest were thought to be insufficiently reliable to be admitted under any exception to the hearsay rule. *See generally* 4 J. Weinstein & M. Berger, at 804–95; *Donnelly v. United States,* 228 U.S. 243, 57 L. Ed. 820, 33 S. Ct. 449 (1913). The Federal Rules of Evidence and our state's counterpart depart from the common law and allow such statements when the declarant is unavailable and the statements so far tend to subject him to criminal liability that a reasonable person would not have made the statements. Fed. R. Evid. 804(b)(3); ER 804(b)(3). The rule also provides that a statement tending to exculpate the accused is not admissible unless corroborated. ER 804(b)(3). Originally, the federal version contained an additional sentence stating: "'*A statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused, is not within this exception.*'" 4 J. Weinstein & M. Berger, at 804–11. Believing that it was unwise to state constitutional doctrine in a rule of evidence, Congress deleted the sentence. 5A K. Tegland, at 304.

Without a specific prohibition of inculpatory statements, the majority of the federal courts have ruled that such

statements are admissible under the rule. *See, e.g., United States v. Alvarez,* 584 F.2d 694 (5th Cir. 1978); *United States v. Sarmiento–Perez,* 633 F.2d 1092 (5th Cir. 1981). In doing so, however, the courts have held that the corroborating circumstances required for exculpatory statements are also necessary for inculpatory statements. *See United States v. Alvarez, supra; United States v. Sarmiento–Perez, supra.* A 3–step test, therefore, has been developed for applying the rule. The *Sarmiento–Perez* court states it as follows:

> Thus, under *Alvarez,* the general test for the admissibility of statements against penal interest is the same, whether those statements are offered to exculpate or to inculpate the accused: (1) The declarant must be unavailable; (2) the statement must so far tend to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) the statement must be corroborated by circumstances clearly indicating its trustworthiness.

*Sarmiento–Perez,* at 1098.

Washington, without discussion, adopted the equivalent of Fed. R. Evid. 804(b)(3). Although strong authority, nothing requires that this court follow the federal decisions in this area. The majority opinion ignores the option of a restricted rule and assumes that we should apply federal precedents and interpret the rule to include inculpatory statements. I disagree. I believe admission of exculpatory statements against penal interest may be constitutionally required while admission of inculpatory statements is not. Admission of exculpatory statements preserves the defendant's fundamental constitutional right to present witnesses and testimony on his own behalf. This right outweighs any countervailing interest the State may have in excluding marginally reliable testimony. In other words, once a threshold reliability is determined, the constitution requires that the statement be admitted. *See generally Chambers v. Mississippi,* 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973). On the other hand, the State's right to

introduce inculpatory evidence enjoys no comparable constitutional protection. This fact alone justifies a narrow interpretation of ER 804(b)(3). That conclusion is bolstered once one considers the overwhelming evidence that such statements were traditionally viewed as so unreliable that they were not generally admissible. Furthermore, the common law approach recognized a distinctive problem with statements against interest. Their reliability depends entirely on generalizations about human motivation. Once a declarant is unavailable, the validity of those generalizations may not be explored by cross examination. The vagaries of human behavior are not, in my opinion, sufficiently predictable to excuse infringement on the defendant's right to confront his accuser. Thus I favor a rule in Washington that interprets ER 804(b)(3) to allow only exculpatory statements against penal interest. Several states have, in fact, enacted versions of Fed. R. Evid. 804(b)(3) that exclude inculpatory statements. Arkansas, Florida, Maine, Nevada, New Jersey, and North Dakota all recognize that these statements should not be allowed.[5]

I believe such a narrow interpretation of ER 804(b)(3) is required by Const. art. 1, § 22, which provides in part:

> In criminal prosecutions the accused shall have the right . . . to meet the witnesses against him *face to face* . . .

(Italics mine.) I cannot imagine a more explicit requirement than "face–to–face" confrontation. Such a requirement assures three fundamental safeguards of confrontation: (1) statements made in court are under oath; (2) the witness is subject to cross examination, the "'greatest legal engine ever invented for the discovery of truth'"; and (3) cross examination permits the jury to observe the demeanor of the witness and thereby evaluate his credibility. *Herbert v. Superior Court,* 117 Cal. App. 3d 661, 172 Cal. Rptr. 850,

---

[5]*See* Arkansas Evidence Rule 804(b)(3); Florida Evidence Code 90.804(2)(c); Maine Evidence Rule 804(b)(3); Nev. Rev. Stat. § 51.345 (1979); New Jersey Rule of Evidence 63(10); North Dakota Evidence Rule 804(b)(3).

852 (1981). In *United States v. Benfield,* 593 F.2d 815, 821 (8th Cir. 1979), the court observed that:

The right of cross–examination reinforces the importance of physical confrontation. Most believe that in some undefined but real way recollection, veracity, and communication are influenced by face–to–face challenge.

Under the majority's present interpretation of ER 804(b)(3), a defendant is denied the right not only to cross–examine the witness and have the jury observe his demeanor, but is denied the important right to physically confront that witness. I believe Const. art. 1, § 22 alone requires that the type of inculpatory statement offered against petitioner, purportedly under ER 804(b)(3), be prohibited.

Notwithstanding these considerations, the majority sees fit to adopt the federal interpretation of ER 804(b)(3) wholesale. It does not, however, correctly apply that doctrine. Using this 3–step process, the majority first implicitly finds that the declarant was unavailable and then proceeds to the second step of determining whether the statements so far tended to expose the declarant to criminal liability that a reasonable person would not have made them unless he believed them to be true. The majority concludes that the statements meet this test. I disagree. First, the statements do not implicate the declarant in criminal activity. Instead, they implicate a third person, not the declarant. Thus, each question refers to the criminal activity of a third person. For instance, the first and most critical question suggests that a man by the name of John is going to get drugs. This question should never have been admitted because the witness could not remember the answer. Even if he had, however, a witness' observation that someone else is going to get drugs is not the basis of criminal liability. The declarant did not say that John was going to get drugs for him; he only acquiesced by silence in the police informant's suggestion that they were being gotten. The majority attempts to circumvent this problem by arguing that the statements taken within the context of the drug transaction

would subject DeHart to criminal sanctions. No court has adopted such a broad rule. Furthermore, I consider such a test to be dangerous and illegal precedent. The logic of the majority's analysis would lead to a rule that allows *any* statement made during the commission of a criminal act to be admissible under the declaration against interest exception. A better rule is set out in *People v. Traylor*, 23 Cal. App. 3d 323, 100 Cal. Rptr. 116 (1972). That court focused on the rationale for the rule and concluded:

> The test here is not whether the statement could provide a link in a chain of evidence leading to the declarant's criminal liability, but whether the statement satisfies the reason why declarations against interest are admitted as an exception to the hearsay rule. According to Wigmore "[t]he basis of the Exception is the principle of experience that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect, and is thus sufficiently sanctioned, though oath and cross–examination are wanting." (5 Wigmore, Evidence (3d ed. 1940) § 1457, pp. 262–263.)

*Traylor,* at 331.

Nor are these statements of the type that implicate *both* the declarant and a third party. Many courts have ruled that these statements are admissible because they directly implicate the declarant and are therefore presumably reliable as to the collateral reference to a third person. *See generally* Comment, *Federal Rule of Evidence 804(b)(3) and Inculpatory Statements Against Penal Interest,* 66 Cal. L. Rev. 1189, 1190 n.7 (1978). In the instant case the statements implicate only the third person. There is absolutely no explicit reference to DeHart's criminal activity.

Second, contrary to the majority's assertion, DeHart had a strong motivation to lie. The rationale for the declaration against interest exception is that reasonable people do not make statements against their interest. *See* Comment to ER 804(b)(3). If the facts surrounding the making of the statement suggest that the declarant may have been acting in his own best interest by lying, the rationale, and therefore the rule, does not apply. *See* 4 J. Weinstein & M. Ber-

ger, *Evidence* ¶ 804(b)(3)[02], at 804–98 (1981). Here, DeHart, as a dealer in drugs, had a strong interest in protecting his supplier. By acquiescing in Milliron's suggestions that Parris was his supplier, DeHart drew suspicion away from himself and/or the real supplier. Thus, if he was walking into a setup, the police would go after Parris as the one most likely to have a quantity of drugs.[6]

Finally, contrary to the majority's assertion, the statements are not spontaneous. They are the direct result of suggestive questioning by a police informant who had a significant interest in pleasing the police. At the time he was working with the police Milliron was facing the possibility of habitual criminal charges being filed against him for a recent felony. He admitted his interest in pleasing the police at trial. He stated:

> A. At that time, realizing the possible penalties that I was faced with, I asked them if there was something I could do in return. Q. Return for what? A. As opposed to the charge. Q. You mean not bring [*sic*] any charge against you? A. Yes.

Report of Proceedings, at 286.[7]

Each of these factors contribute to the conclusion that the statements do not fall within the terms of ER 804(b)(3). A more difficult question, however, involves the relationship of this hearsay exception to the confrontation clause. I believe the confrontation clauses of the state and federal

---

[6]The majority opinion treats motivation as an extra factor concerning reliability. Although it may sometimes aid in that inquiry, its principal function is to determine whether or not the hearsay exception is applicable.

[7]There is some evidence that the police coerced Milliron into participating in this drug buy. It appears that Detective Flint, a participant in the drug purchase, informed Milliron after his arrest that he was facing habitual criminal charges. Milliron was asked by defense counsel:

> Q: Do you recall telling me that Detective Flint, in so many words, said to you: It looks like this time you bit the big one, and he threatened to have the habitual criminal charges filed, and you wouldn't see your old lady again? . . . A: Not those exact words. . . . A: Well, some words to that effect; that I was in trouble, yes.

Report of Proceedings, at 287–88.

constitutions require that this evidence be excluded irrespective of whether it falls within the terms of ER 804(b)(3).

## CONFRONTATION CLAUSE

The confrontation clause of the sixth amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . .

Washington's constitution has a parallel provision, which states:

> In criminal prosecutions the accused shall have the right . . . to meet the witnesses against him *face to face* . . .

(Italics mine.) Const. art. 1, § 22. In contrast to the federal provision, Const. art. 1, § 22 plainly affords the accused the right to physically confront the witnesses against him. Although as a practical matter this provision cannot be applied as an absolute bar to hearsay, the strong language of our state constitution, requiring as it does face–to–face confrontation, weighs more heavily than its federal counterpart in favor of excluding inculpatory statements when there is *any* doubt as to their reliability.

The importance of these rights to our system of justice cannot be overstated. In reversing on its own motion a conviction that violated these rights, the Wisconsin Supreme Court observed:

> The needs of our system of justice also bolster our view that the conviction must be reversed. A trial conducted in violation of the defendant's confrontation rights is a trial that flouts fundamental concepts of justice basic to our system. Where a defendant is convicted in a way inconsistent with the fairness and integrity of judicial proceedings, then the courts should invoke the plain-error rule in order to protect their own public reputation.

(Citation omitted.) *Virgil v. State,* 84 Wis. 2d 166, 192, 267 N.W.2d 852 (1978).

On the other hand, despite the strong language of these

provisions, the right to confront witnesses has not been interpreted as an absolute. *Chambers v. Mississippi*, 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973). The courts balance this right against the need for effective law enforcement and precise formulation of the rules of evidence applicable in criminal proceedings. *Ohio v. Roberts*, 448 U.S. 56, 64, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980). One result of this balance has been the United States Supreme Court's acknowledgment that in certain cases hearsay testimony may be admitted despite the fact that the defendant's right to confront witnesses has been curtailed. The question this court must answer is: What is the proper balance between the confrontation clause of the federal and state constitutions and inculpatory statements admitted under ER 804(b)(3)? The majority resolves the balance against the defendant. I disagree. Insofar as the United States constitutional provision is concerned, a thorough examination of three recent United States Supreme Court decisions in this area demonstrates why the balance must be struck in the defendant's favor.

*California v. Green,* 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970) contains the basic principles. In discussing the relationship between hearsay and the confrontation clause the Court notes:

> While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have *never* established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception.

(Citations omitted. Italics mine.) *Green,* at 155–56.

In *Green* the Court concluded that the confrontation clause is not violated by admitting a declarant's out–of–court statements as long as the declarant is testifying as a

witness. *Green,* at 158.

Two subsequent cases, *Dutton v. Evans,* 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970) and *Ohio v. Roberts, supra,* made it clear that in some circumstances out-of-court testimony could be admitted even if the declarant did not take the stand. *Dutton* involved an out-of-court statement admitted during the course of a murder trial. Appellant, Alex Evans, and two other men, Wade Truett and Venson Williams, were charged with killing three police officers. Truett, a participant and eyewitness to the murders, was granted immunity and testified against Evans and Williams. Williams and Evans were tried separately. In the Evans trial, the prosecution produced 19 other witnesses, among them a man by the name of Shaw. Shaw, a fellow inmate of Williams, testified that Williams, when returned to the penitentiary, had answered his inquiry on how it went by saying, "'If it hadn't been for that dirty son-of-a-bitch Alex Evans, we wouldn't be in this now.'" *Dutton,* at 77. The Supreme Court held the admission of Williams' hearsay statement did not violate Evans' right to confront witnesses against him. The Court distinguished *Dutton* from previous confrontation clause cases by noting that the case did not involve: (1) evidence in any sense "'crucial'" or "'devastating'"; (2) the use or misuse of a confession made in a coercive atmosphere; (3) any suggestion of prosecutorial misconduct; (4) a paper transcript; (5) a joint trial; and (6) the wholesale denial of cross examination. The Court went on to observe that the most important witness, the eyewitness who described the murders in detail, was cross-examined at great length. *Dutton,* at 87.

More recently, the Supreme Court again addressed the confrontation clause-hearsay problem in the case of *Ohio v. Roberts, supra. Roberts* involved the use of testimony from a pretrial proceeding in which the defense was allowed to question the witness. At the time of trial the witness was unavailable and the transcript was introduced to rebut the defendant's explanation of events. A majority of the Court found that the defendant's confrontation rights were not

violated primarily because defense counsel had an opportunity to question the witness at the prior proceeding. Emphasizing once again that the confrontation clause is not identical with the rules of evidence, the Court observed:

[T]he Clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule."

(Citation omitted.) *Roberts,* at 65.

Attempting to provide some guidance but reluctant to state hard and fast rules, the Supreme Court summarized the requirements of the confrontation clause in the passage quoted by the majority. Majority opinion, at 145. It concluded that hearsay may be admitted where the prosecution shows that the declarant is unavailable, and the evidence either falls within a firmly rooted exception to the hearsay rule *or* a showing of particularized guaranties of trustworthiness is made. *Roberts,* at 66. The majority opinion purports to apply the particularized guaranties of trustworthiness test stated in *Roberts.* The indicia of reliability test, however, must be placed in the context of the *Green–Dutton–Roberts* trilogy and the rationale behind the rule. In each of these cases the Court expressed strong concern for the integrity of the factfinding process and allowed a balance to be struck when the amount of the infringement on the defendant's Sixth Amendment right was minimal in comparison to the trustworthiness of the statement. The majority does not make a meaningful attempt to evaluate the amount of infringement on the defendant's right to confront the witness. If it had, the balance would have to have been struck in favor of excluding the hearsay. For instance, in *Green* the impairment of the defendant's right to confront the witness was minimal because the statement which was being admitted was one of a witness at the trial. Thus, though the defendant could not cross–examine the declarant at the time he made the statement he could do so at trial. In *Dutton,* on the other hand, the declarant was never produced at trial. But the factfinding process was protected by the defendant's ability to cross–examine the

critical eyewitness, as well as 19 other witnesses. Furthermore, the defendant in *Dutton* could have subpoenaed the declarant but chose not to do so because his lawyer concluded it was not in his best interest. Thus, the Court may have considered the refusal to call the declarant as a partial waiver of the confrontation right. Also, the *Dutton* Court noted that cross examination of the declarant would have been of little value to Evans, because the underlying circumstances were such as to indicate the statements were true. Finally, in *Roberts,* the Court concluded that the Sixth Amendment infringement was minimal because the defendant had the opportunity to question the witness at the pretrial hearing.

In the present case, however, each of these factors weigh in favor of protecting the defendant's right to confront witnesses. Here, the declarant was definitely unavailable. There was no question but that DeHart had refused to testify. The defendant therefore could not waive his confrontation rights. Unlike *Dutton* the testimony in this case was critical to the prosecution; it is just the type of evidence the *Dutton* Court referred to as "'crucial'" or "'devastating'". Only the hearsay statements of DeHart connect Parris' presence in the area with the sale of drugs. Also, unlike *Dutton,* cross examination of DeHart could have accomplished a variety of things, most important of which is exploring possible motives for DeHart to lie.[8] In the same way this case differs significantly from *Roberts.* There the defense had an opportunity to question the declarant. Here the defense at no time was allowed to question the declarant.

In summary then, the extent of the infringement of defendant's constitutional right was greater than in any of the United States Supreme Court cases relied upon by the

---

[8]For instance, DeHart may have arranged to meet Parris at the same time he met with Milliron so as to deflect suspicion from himself and his source. DeHart may have also had a personal grudge against Parris or may simply have acquiesced in the statements as a method of limiting further inquiries.

majority. When this fact is balanced against an accurate evaluation of the reliability of these statements, the balance should be resolved in favor of the defendant.

## RELIABILITY

Assuming for the moment that the majority had correctly resolved the application of ER 804(b)(3) and the confrontation clause issue, a further inquiry is needed. This court must decide what standards of reliability are required under both the rule and the constitution.[9] The majority analysis lumps together the confrontation clause, inculpatory statements under ER 804(b)(3), and exculpatory statements under ER 804(b)(3). A better rule, and one adopted by the Fifth Circuit in *United States v. Sarmiento-Perez,* 633 F.2d 1092 (5th Cir. 1981), recognizes the constitutional problems connected with each type of statement. Refusing to admit an exculpatory statement may violate a defendant's right to present witnesses. Of this right the United States Supreme Court has said:

> Few rights are more fundamental than that of an accused to present witnesses in his own defense . . . [W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.

(Citations omitted.) *Chambers v. Mississippi,* 410 U.S. 284, 302, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973).

Admission of an inculpatory statement, on the other hand, may directly violate the defendant's right to confront witnesses. The *Sarmiento-Perez* court summarized the problems:

> [A] clear distinction must be drawn between statements against penal interest that are offered to exculpate a

---

[9]If the statements are of dubious reliability, they should have been excluded under the provisions of ER 403. That rule provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

criminal defendant, as against those that are offered to inculpate him. The admission under Rule 804(b)(3) of against–interest–of–declarant hearsay statements that inculpate a criminal defendant results in the diminution of rights traditionally viewed as essential and fundamental components of an accused person's right of confrontation. Therefore, sixth amendment values demand that the threshold measure of admissibility under Rule 804(b)(3)—the *Alvarez* test—be applied in light of the "close examination" called for in *Chambers v. Mississippi, supra.*[10] *Ohio v. Roberts, [supra]*.

*Sarmiento–Perez,* at 1100.

Applying the close examination test referred to above leads inescapably to the conclusion that this evidence is so unreliable that its admission "flouts fundamental concepts of justice". *Virgil v. State,* 84 Wis. 2d 166, 192, 267 N.W.2d 852 (1978). Contrary to the majority's assertion, the statements in question contain few, if any, indicia of reliability. The majority looks to a footnote in *United States v. Alvarez,* 584 F.2d 694 (5th Cir. 1978) for guidelines in determining the trustworthiness of extrajudicial statements. In doing so it ignores the two primary guidelines relied upon by that court in the text of that opinion. Those guidelines resulted in the court excluding statements similar to those admitted here. In *Alvarez* the defendant was convicted of trafficking in heroin on the basis of the testimony of one Lopez. Lopez claimed that he obtained the heroin from Mejorado. Mejorado supposedly got it from Alvarez. Lopez, a police informant, alleged Mejorado told him that Alvarez was his supplier. Prior to trial, Mejorado was killed in an automobile accident, and the trial judge allowed Lopez to testify about his conversations with Mejorado. The testimony included a phone call which occurred immediately prior to the heroin delivery. The

---

[10]Note the close examination referred to by the *Sarmiento–Perez* court involved the first issue presented by *Chambers*—whether a state could apply a voucher rule to limit the defendant's cross examination of a witness. Neither the *Sarmiento–Perez* court nor the majority opinion in *Chambers* suggests that exculpatory statements must be closely examined.

Fifth Circuit held that the federal version of ER 804(b)(3) requires corroboration for inculpatory statements as well as exculpatory and adopted the following test:

Under Rule 804(b)(3), trustworthiness is determined primarily by analysis of two elements: the probable veracity of the in–court witness, and the reliability of the out–of–court declarant.

(Citation omitted.) *Alvarez,* at 701.

In applying the test the court noted that Lopez presumably testified in hopes of receiving preferential treatment. Like Lopez, Milliron, the chief in–court witness, here had a strong motivation to curry favor with the authorities. In fact, Milliron asked the police if he could do anything to help.

Applying the second prong of the test, the *Alvarez* court turned to the reliability of the declarant and observed:

[T]he traditional surety of reliability for this hearsay exception, the statement's contravention of the declarant's interest, is extremely weak in this case.

(Citation omitted.) *Alvarez,* at 701. Like the case before us, *Alvarez* involved statements made by the declarant which only incidentally implicated the defendant. Thus, though the court did find that the statements fell within the exception, it ultimately concluded that they were insufficiently reliable to be admitted. The similarity of these cases and the minimal reliability of statements against penal interest convince me that the same result is required here.

I am equally unconvinced by the majority's attempt to manufacture reliability by looking to other evidence of the defendant's guilt. The majority relied on the Court of Appeals decision in *State v. Valladares,* 31 Wn. App. 63, 639 P.2d 813 (1982). That court in turn relied upon *Chambers.* That reliance is misplaced. In *Chambers,* the defendant sought to cross–examine his own witness, Gable McDonald, who had confessed to the crime in question and then repudiated his confession. Chambers also tried to present witnesses who had heard McDonald admit that he had committed the crime. The Court held that it was error

to reject defendant's attempts to make McDonald an adverse witness so that he could be cross-examined. It also held that it was error to exclude the hearsay evidence of McDonald's prior admissions of guilt. In doing so, the Court looked to other evidence of the *declarant's* guilt to provide corroboration and reliability to the statements and to the circumstances surrounding the making of the statement. This is vastly different than the majority's attempt to bootstrap the reliability of the *declarant's statement* on the *guilt* of the *defendant.* Furthermore, in *Chambers* the defendant sought to preserve his right to present witnesses and the Court held that the hearsay statement interfered with that right. In the present case the hearsay statement itself infringes on the Sixth Amendment right.

By admitting hearsay of dubious reliability, the majority strikes a blow to the fundamental right to due process that is every defendant's right. As Justice Powell observed:

> The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process.

*Chambers,* at 294. I believe the majority opinion deprives John Parris of one of the most fundamental rights of our system of justice—the right to confront and cross-examine the chief witness against him. "Petitioner was thus denied the right of effective cross-examination which '"would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." . . .'" (Citations omitted.) *Davis v. Alaska,* 415 U.S. 308, 318, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974), quoting from *Brookhart v. Janis,* 384 U.S. 1, 3, 16 L. Ed. 2d 314, 86 S. Ct. 1245 (1966) and *Smith v. Illinois,* 390 U.S. 129, 131, 19 L. Ed. 2d 956, 88 S. Ct. 748 (1968). Violation of that right requires that this conviction be reversed.

UTTER, J., and CUNNINGHAM, J. Pro Tem., concur with WILLIAMS, J.